SCHMOLDT IMPORTING COMPANY, Plaintiff–Appellant,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant–Appellee.

No. 65007.

Supreme Court of Oklahoma.

Jan. 10, 1989.

**412**

Michael D. Gilliard, Messrs. McGivern, Scott, Gilliard, McGivern & Robinson, Tulsa, for plaintiff-appellant.

Randall S. Pickard, J. Richard Studenny & Associates, Tulsa, for defendant-appellee.

OPALA, Vice Chief Justice.

The dispositive issue presented for our review is whether the plaintiff-consignee made a timely written complaint of *damaged* and *delayed* goods to the defendant-carrier in compliance with the notice requirements of Article 26 of the Warsaw Convention [Convention].[1] We answer in the affirmative insofar as the consignee's claim affects damaged goods and in the negative as to delayed goods.

## THE ANATOMY OF LITIGATION

On September 6, 1982 Schmoldt Importing Company [Schmoldt], a Tulsa merchant, purchased 1,000 fur hats for retail sale during the 1982 Christmas season. Schmoldt later hired Pan American World Airways [Pan American] to ship the goods from Beijing, China to Tulsa, Oklahoma. On November 26, 1982 Pan American received the hats from a Chinese merchant and transported them to Los Angeles, California, where the goods remained for nearly one month. During this time Schmoldt repeatedly telephoned Pan American in an effort to hasten delivery.

Continental Airlines, the connecting carrier, received the goods from Pan American and stamped "RECEIVED DAMAGED" on the air waybill—the transportation document. On *December 27, 1982* Continental Airlines completed the international shipment in suit when it transported the merchandise to Tulsa. Upon receipt of the goods, a Schmoldt representative signed the waybill after writing, "1 Box open prior to Inspection." Schmoldt subse-

---

**1.** The Warsaw Convention [Convention], officially denominated the "Convention For Unification of Certain Rules Relating to International Transportation by Air," governs the liability of air carriers engaged in international air travel. See 49 U.S.C. 1502 for the Historical Note followed by the full text of the Warsaw Convention. *The Convention preempts local law* in areas where it applies. See *Highlands Ins. v. Trinidad Tobago (BWIA Intern.),* 739 F.2d 536, 537 [11th Cir.1984]; and *Burnett v. Trans World Airlines, Inc.,* 368 F.Supp. 1152, 1155 [D.N.M. 1973].

quently wrote a more detailed complaint and mailed it to Pan American on *February 16, 1983.*

Schmoldt filed suit against Pan American alleging, *inter alia,* that it suffered damages due to the one month delay in delivery and the hats were water-damaged and unfit for resale. In its defense Pan American urged that the Convention governs the claim in suit and that Schmoldt failed to make the timely written complaint required by Article 26 [2] of that treaty. The trial court gave summary judgment to Pan American, concluding the Convention governs the parties' rights and Schmoldt's claim, both for delayed and damaged goods, is barred by Article 26(4).

# I

## THE APPLICABILITY OF THE CONVENTION

■ This case involves the international air transportation of cargo from China to the United States. Although both of these countries are contracting parties to the Convention, Schmoldt argues the Convention is not applicable because Pan American's retention of the merchandise at the Los Angeles Airport for 26 days terminated the international character of the air shipment. Schmoldt's argument must fail because it conflicts with the definition of "international transportation" in Article 1(2) of the Convention. The cited article provides in pertinent part:

> "For the purposes of this convention the expression 'international transportation' shall mean any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, *whether or not there be a break in the transportation* ..., are situated ... within the territories of two High Contracting Parties...." [Emphasis added.]

The quoted article clearly indicates the Convention applies to this case.[3] The fact that Schmoldt's merchandise was detained in California for 26 days is irrelevant. We next consider the primary issue presented—the impact of the Article 26(2) notice requirements on the consignee's claim.

# II

## THE CONVENTION'S NOTICE REQUIREMENTS

### A. *The Destroyed Goods Exception To the Notice Requirements*

■ Schmoldt contends Article 26(2) only requires written notification if goods are *damaged or delayed,* not when goods are *destroyed.* Schmoldt argues that its claim is not barred by Article 26(4) [4] because the

---

2. Article 26 of the Convention provides:
   "(1) Receipt by the person entitled to the delivery of baggage or goods without complaint shall be *prima facie* evidence that the same have been delivered in good condition and in accordance with the document of transportation.
   (2) *In case of damage, the person entitled to delivery must complain to the carrier* forthwith after the discovery of the damage, and at the latest, *within* 3 days from the date of receipt in the case of baggage and 7 *days from the date of receipt in the case of goods.* In case of *delay the complaint must be made at the latest within 14 days from the date on which the baggage or goods have been placed at his disposal.*
   (3) Every complaint must be made *in writing upon the document of transportation* or by separate notice in writing dispatched within the times aforesaid.
   (4) *Failing complaint within the times aforesaid, no action shall lie* against the carrier, save in the case of fraud on his part." [Emphasis added.]

Prior to the Convention's official adoption, Article 26 stood designated as Article 27; see Minutes of the Second International Conference on Private Aeronautical Law, *infra* note 13 at 266.

3. See also, *Butz v. British Airways,* 421 F.Supp. 127, 129 [E.D.Pa.1976], aff'd 566 F.2d 1168 [3rd Cir.1977] (when the parties' contract provides for transportation between Convention signatories, the provisions of the Convention apply and exclusively govern the parties' rights and liabilities) and *Chandler v. Jet Air Freight, Inc.,* 54 Ill.App.3d 1005, 12 Ill.Dec. 472, 475, 370 N.E.2d 95, 98 [1977] (the international character of the transportation of goods, and thus, the applicability of the Convention, is to be determined from the contract's terms, not from the situs of the goods at any given time once transportation has commenced).

4. For the text of Article 26(2) and 26(4) *see supra* note 2.

hats were entirely unfit for resale and were hence "destroyed."

The exception for destroyed merchandise first came to be recognized in *Dalton v. Delta Airlines, Inc.*[5] where five racing dogs died while being transported from Ireland to the United States. The court held the claim was not barred, even though no written complaint had been made within the time prescribed by Article 26(2).

In support of its decision the court initially noted Article 13(3) [6] of the Convention, which expressly covers lost goods, does not require an aggrieved consignee to give any notice to the carrier, written or otherwise.[7] The court then added that Article 18(1) [8] distinguishes between lost, damaged and destroyed goods. Next, it pointed to the key similarity between lost and destroyed goods, both of which are wholly without economic value or utility to the consignee, except perhaps for their worth as mere scrap or salvage.[9]

Both the *Dalton* exception (for destroyed goods) and the related economic-value test have come to be generally recognized in the jurisprudence that followed.[10] Although we accept the *Dalton* rationale, we find no legal basis for its application here. The appellate record is barren of any undisputed facts, which we may take as true,[11] concerning the condition of the goods. There is hence nothing before us on which to gauge the applicability of the *Dalton* exception.

### B. *The Notice Requirements for Delayed and Destroyed Goods*

■ We agree with Schmoldt's contention that the two notations appearing on the air waybill satisfy the Article 26(2) notice requirements for damaged goods.[12] Article 26(2) requires that the person entitled to delivery must complain to the carrier within *7 days* if goods are *damaged* or within *14 days* if goods are *delayed*. There is no provision requiring a detailed complaint;[13] the same is true of Article

---

**5.** 570 F.2d 1244, 1246 [5th Cir.1978].

**6.** Article 13(3) of the Convention provides:

"If the carrier admits the loss of the goods, or if the goods have not arrived at the expiration of seven days after the date on which they ought to have arrived, the consignee shall be entitled to put into force against the carrier the rights which flow from the contract of transportation."

**7.** *Dalton v. Delta Airlines, Inc., supra* note 5 at 1246.

**8.** Article 18(1) of the Convention provides:

"The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air."

**9.** *Dalton v. Delta Airlines, Inc., supra* note 5 at 1246–1247.

**10.** See *Hughes–Gibb & Co., Ltd. v. Flying Tiger Line, Inc.,* 504 F.Supp. 1239, 1242–1243 [N.D.Ill. 1981] (the court applied the *Dalton* exception, stating that the economic-value test is whether the goods remain usable for the owner's purposes); and *Highlands Ins. v. Trinidad & Tobago, supra* note 1 at 539 (the court considered *Dalton, supra* note 5, to be a correct decision, but added, "If *Dalton* applies at all beyond ani-

mal cases, it controls only situations where the destruction is both total and obvious.").

**11.** Where, as here, there was *no* nisi prius resolution of fact issues, an appellate court may assume as true *only* those facts which stand *undisputed and would support but a single inference.* See in this connection *Flick v. Crouch,* Okl., 434 P.2d 256, 262 [1967]; *Wetsel v. Independent School Dist. I–1,* Okl., 670 P.2d 986, 991 [1983]; *Minor v. Zidell Trust,* Okl., 618 P.2d 392, 395 [1980]; and *Bohn v. Divine,* Okl.App., 544 P.2d 916, 920 [1975]; see also *Womack v. City of Oklahoma City,* Okl., 726 P.2d 1178, 1181 [1986]; and *Thomas v. Keith Hensel Optical Labs,* Okl., 653 P.2d 201, 203 [1982].

**12.** Schmoldt does not argue that its correspondence under the February 16, 1983 date constitutes actual written notice within the time allowed.

**13.** The Convention's drafters spent an appreciable length of time arguing over the precise language of Article 26. Their discussions focused primarily on the effect of receiving goods without complaint and the maximum time period within which the consignee must complain, regardless of whether damage is apparent. See Minutes of the Second International Conference on Private Aeronautical Law, October 4–12, 1929, Warsaw, translated by R.C. Horner and D. Legrez. The Minutes do not report any discussion over the information a complaint should contain.

26(3).[14] The latter requires only that the complaint be in writing. Moreover, Article 26(3) specifically provides a complaint made on the document of transportation is sufficient. Because writing space may be limited on such a document, succinct complaints are often a necessity. These factors indicate that Article 26's purpose is merely to ensure the carrier receives notice that goods were damaged in some way during transportation, rather than to burden the consignee with onerous hypertechnical hurdles to be surmounted in the process of damages recovery.

In *Pesquera Navimar, S.A. v. Ecuatoriana De Aviacion* [15] the court took a similar view. It discussed notations made on an air waybill, stating that "the purpose of the notice requirement is just that, to give notice." The court there observed in this context that the critical question is whether a notation gives adequate notice of damage. Here, we similarly conclude that Schmoldt's notation, viewed together with that of Continental Airlines, was adequate notice to Pan American that the goods were damaged during transportation. Continental's notation—"Received Damaged" —means exactly what it says.

Pan American asserts a contrary view and argues that Continental Airlines' notation does not satisfy the requirements of Article 26. In support of its position Pan American cites to *Amazon Coffee v. Trans World Airlines, Inc.*[16] There, the plaintiff's president rejected a shipment of cheese. On the same day, the defendant prepared an internal report indicating that the goods were rejected because of damage; the plaintiff's president apparently signed the report. The trial court concluded the report did not satisfy that part of

Article 26(2) which requires *the person entitled to delivery* to make the complaint.

We simply note that the decision in *Amazon* was reversed on appeal.[17] The upper court said that "[i]f plaintiff's president did indeed sign the report, it would constitute sufficient compliance with the Convention's requirement of a written notice of complaint." [18] The air waybill in the present case equally satisfies the requirement. After Continental Airlines had made a written *statement of damage on the waybill,* a Schmoldt representative signed it and added his own notation. As Article 26(3) does not distinguish between written complaints made on transportation documents and those effected by a separate written notice, we see no practical difference between waybills and internal reports.

In sum, Article 26(2) and (3), viewed in conjunction, set forth two requirements for maintaining an action against a carrier: (1) the person entitled to delivery must make a timely written complaint; and (2) the carrier must thereby be notified of *either delay* or *damage* during transportation, or both. Failure to satisfy *either prerequisite* will bar recovery under Article 26(4).

Schmoldt's notation on the air waybill constitutes a complaint because it indicates some meddling with the merchandise. This complaint was made the day of receipt— well within the seven-day period allowed by Article 26(2). The first requirement is hence satisfied. The second requirement is likewise satisfied because Continental's notation clearly indicates that the goods were, in fact, *physically damaged.* Finally, the notations made by Schmoldt and Continental Airlines, considered together, do not frustrate the purpose of Article 26. Accordingly, we hold Schmoldt's cause of action for *physical damage* to its goods is

---

**14.** For the provisions of Article 26(2) and 26(3) see *supra* note 2.

**15.** 680 F.Supp. 1526, 1527 [S.D.Fla.1988]. Other courts have stated that the purpose of Article 26 is to "inform the carrier adequately of the *nature* of the damages claimed." See *Highlands Ins. v. Trinidad & Tobago (BWIA Intern.), supra* note 1 at 540, and *Amazon Coffee Co. v. Trans World Airlines,* 111 A.D.2d 776, 490 N.Y.S.2d 523, 524 [2 Dept.1985]. For the reasons stated

earlier in Part II, we decline to adopt this view of the notice requirement.

**16.** 18 Av.Cas. (CCH) 17,264 [N.Y.S.Ct.1983] (citation provided by counsel for defendant-carrier).

**17.** *Amazon Coffee Co. v. Trans World Airlines, supra* note 15, 490 N.Y.S.2d at 523.

**18.** *Amazon Coffee Co. v. Trans World Airlines, supra* note 15 at 524.

not barred by Article 26(4). Inasmuch as these notations allude only, to *physical damage* to Schmoldt's merchandise and not to *delay* in the goods' delivery, that part of Schmoldt's claim which includes damages for delay is barred by Article 26(4).[19]

The trial court's summary judgment is accordingly reversed insofar as it affects Schmoldt's right to recover for damaged goods; it is affirmed as a partial summary adjudication[20] which denies Schmoldt recovery for delay in the goods' delivery. The cause is remanded for further proceedings not inconsistent with this pronouncement.

HARGRAVE, C.J., and HODGES, SIMMS, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

DOOLIN, J., dissents.

19. Timely written notice of physical damage has no legal effect on a consignee's responsibility to complain separately of damage from delay. This is so because Article 26(3) requires *every* complaint be made in writing, and Article 26(2) clearly distinguishes claims for damage from those for delay. Furthermore, failure to complain separately of delay is, by Article 26(1), prima facie evidence of the goods' timely delivery.

20. While the provisions of the Convention must be applied to the claim in suit, court procedure that is unaffected by this treaty is to be governed in every case by the law of the forum (*lex fori*). See Article 28(2) of the Convention which provides that "[q]uestions of procedure shall be governed by the law of the court to which the case is submitted." Under Oklahoma law, the *lex fori*, one occurrence or transaction gives rise to but a single cause of action. Because Schmoldt's claim presses for damages to the goods as well as for delay in delivery, both derived from the same shipment, it arises from one occurrence or transaction and hence affords the plaintiff but a single cause of action. See *Retherford v. Halliburton Co.,* Okl., 572 P.2d 966, 968–969 [1978]; and *Reams v. Tulsa Cable Television, Inc.,* Okl., 604 P.2d 373, 374–376 [1979]. Our pronouncement today bars *only that element of Schmoldt's single claim* which presses for delay damages.