Judy Kay HULSEY, administratrix of the estate of Robert Lee Hulsey, deceased, Plaintiff-Appellant,

v.

MID–AMERICA PREFERRED INSURANCE COMPANY, Defendant–Appellee.

No. 67822.

Supreme Court of Oklahoma.

July 11, 1989.

---

5. See *infra* note 9.

6. See *infra* note 8.

Greg McCracken, Messrs. Miskovsky and McCracken, Oklahoma City, for plaintiff-appellant.

Stephen L. Stratton, Jerry Fraley, Messrs. Cathcart, Gofton & Stratton, Oklahoma City, for defendant-appellee.

OPALA, Vice Chief Justice.

The dispositive issue on certiorari is whether the petition states a claim upon which relief can be granted. We answer in the affirmative.

While driving his pickup late one night, Robert L. Hulsey [insured] received a fatal gunshot wound to the head. The bullet came from another vehicle whose type, driver and occupants, if any, are not identified.[1] The unidentified vehicle never made physical contact with the insured's truck.

Judy Kay Hulsey [plaintiff], the insured's widow, sued the uninsured motorist [UM] carrier, Mid–America Preferred Insurance Company [insurer], to recover for the loss. She alleges that a hit-and-run driver caused the insured's death.

The insurer moved for summary judgment, arguing that the following terms of the insurance policy preclude recovery:

"We will pay damages which a covered person is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

    1. Sustained by a covered person; and

    2. Caused by an accident.

"The owner's or operator's liability for these damages must arise out of the *ownership, maintenance* or *use* of the uninsured motor vehicle....

"Uninsured motor vehicle" means a land motor vehicle or trailer of any type: ...

    3. Which is a hit and run vehicle whose operator or owner cannot be identified and which causes an accident resulting in bodily injury to a covered person." [Emphasis by the insurer.]

The insurer argues the policy's UM provisions do not cover murder and, because the "intentional" shooting in controversy did not arise out of the unidentified vehicle's ownership, maintenance or use, the plaintiff cannot recover.

Without revealing the grounds upon which its decision was based, the trial court gave summary judgment to the insurer.[2] The Court of Appeals reversed, holding the

---

1. The insurer admitted in its brief below "[i]t is uncontroverted that plaintiff's decedent was shot and killed by an unidentified assailant from an unidentified vehicle." The plaintiff alleges these facts in her petition. For a more detailed discussion of her allegations, see part II of this opinion.

2. As she did below, the plaintiff urges on appeal that summary judgment for the insurer was improper because material fact issues stood in dispute. She also contends summary judgment should have gone to her. We reject the latter argument. For the reasons to be explained in part I of this opinion, neither party was entitled to judgment *sans* trial.

harm-dealing incident must be viewed from the insured's perspective and, from that vantage point, the death appears to have been accidental.[3]  The appellate court further held:

> "[A]lthough some causal relationship or nexus must exist between the use of the automobile and the injury, the automobile need not be the instrumentality of the injury nor must the type of conduct which causes the injury be foreseeably identifiable with the normal use of a vehicle.  It is for the trier of fact to decide whether the accident arose out of 'use' of an uninsured vehicle."

Among other things, the appellate court incorrectly assumed as an admitted fact that the insured was the *targeted* victim of an *intentional* shooting.  Other facts were similarly treated as uncontroverted, though they were neither undisputed nor supported by evidentiary material from which but a single inference could be drawn—one in favor of coverage.[4]  For this reason we now grant certiorari to provide necessary and precedential guidance for the proceedings to follow on remand.

**3.** See *infra* note 20.

**4.** See *infra* note 15.

**5.** The certified copy of the appearance docket in the case—requested by this court for supplementary inclusion in the record—does not reflect the filing of any deposition.  See Rule 1.20(g), Rules of Appellate Procedure in Civil Cases, 12 O.S.1981, Ch. 15, App. 2, authorizing this court to call for transmission of any undesignated part of the record.  See also, *infra* note 9.  While neither the appearance docket sheets nor minutes unsigned by the judge may be accepted by a reviewing court as a proper substitute for the judge's memorialized entry of judgment, orders, or of any proceedings occurring at *nisi prius* (*Elliott v. City of Guthrie*, Okl., 725 P.2d 861, 863 [1986]; *Chamberlin v. Chamberlin*, Okl., 720 P.2d 721, 723 [1986] ), the appearance docket may serve in an appellate tribunal as an authoritative source for identifying the instruments the court clerk has filed in the case or for establishing any other matter which by law is required to be spread on that docket.  12 O.S.1981 § 23; *Little v. Employer's Casualty Co.*, 180 Okl. 628, 71 P.2d 687–688 [1937].

**6.** Even if the insurance policy were to be treated as material extraneous to the petition rather than as an exhibit, summary judgment for the insurer would nonetheless be reversible for want of supportive material to show a complete absence of critical fact issues in the lawsuit.

I.

## ·SUMMARY JUDGMENT FOR THE INSURER CANNOT STAND

■  When the insurer sought summary judgment, copies of the policy and some legal authorities from this and other jurisdictions constituted the totality of the material appended to its motion and brief. The plaintiff's response consisted of like attachments.  Although both parties referred several times to the "testimony" of various witnesses who had apparently been deposed, *no materials extraneous to the pleadings were either tendered for the court's consideration or even filed with the trial court.*[5]  We treat the policy as a part of the plaintiff's petition.  It was explicitly identified in that pleading as an attached exhibit,[6] even though its copy *was not physically appended* to it.[7]

■  Deposition testimony that is not on file in conformity with 12 O.S.Supp.1986 § 3207(G)[8] may not be used as evidentiary

**7.** Common law requires physical annexation of exhibits.  *Barton v. Alpine Investments, Inc.*, Okl., 596 P.2d 532, 535 n. 6 [1979] (Opala, J., concurring in result).  Incorporation of extraneous material into a pleading by reference to recorded instruments came to be sanctioned in this state with the enactment of 12 O.S.1981 § 305.1, *infra*.  There is no legal obstacle to our treatment of the later-tendered policy as part of the petition *ab initio*.
The terms of 12 O.S.1981 § 305.1 are:
> "From and after the passage of this act *in all civil cases whereby it is necessary to incorporate, in the pleadings, facts concerning instruments of record affecting real estate,* that such incorporation may be made by reference to the date of such instrument, and the book and page number where recorded *in lieu of affixing a copy of the same to such pleadings.*" [Emphasis added.]

**8.** The pertinent terms of 12 O.S.Supp.1986 § 3207(G) are:
> "* * *
> Unless otherwise ordered by the court, *the officer shall securely seal the deposition* [taken upon oral examination] in an envelope endorsed with the title of the action and marked "Deposition of (here insert name of witness)" *and shall promptly file it with the court in which the action is pending* or send it by registered or certified mail to the clerk thereof for filing.

material in the summary judgment process.[9] *By stipulation shown in the record,* the parties may tender an abstracted transcript of an unfiled deposition to support their quest for judgment *sans* trial.[10] In any event, an appellate court cannot, on review, take notice of any item that was not *properly* before the trial court.[11] The appellant bears the *total responsibility* for including in the appellate record *all* materials necessary to secure corrective relief.[12] A deficient record may not be supplemented or corrected on rehearing.[13]

　＊ ＊ ＊ " [Emphasis added.]

**9.** Deposition material that was *neither* filed in the court clerk's office *nor* shown by the record to have been tendered for the trial court's consideration is not a part of the appellate record. See in this connection, 12 O.S.Supp.1986 § 3207(G), *supra* note 8; *Estate of Whitlock,* Okl., 754 P.2d 862, 862–863 [1988]; Rule 13, Rules for the District Court, 12 O.S.Supp.1984, Ch. 2, App., *infra* note 11. Insofar as the filing requirement in § 3207(G) might be viewed as in conflict with Rule 13's guidelines for summary judgment process, the statute must control. *Oklahoma County Sheriff v. Hunter,* Okl., 615 P.2d 1007, 1008 [1980]; *Transok Pipe Line Company v. Darks,* Okl., 515 P.2d 218, 219 [1973].

**10.** Here, there is no record trail of *any* deposition on file in the trial court and nowhere in this record is there reference to an agreement tendering transcribed portions of unfiled deposition testimony in support of the insurer's summary judgment quest.

**11.** See *Frey v. Independence Fire and Cas. Co.,* Okl., 698 P.2d 17, 20 [1985]; Rule 13, Rules for the District Court, 12 O.S.Supp.1984, Ch. 2, App., whose pertinent terms are:

"a. *A party may move for judgment in his favor* on the ground that the depositions, admissions in the pleadings, stipulations, answers to interrogatories and to requests for admissions, affidavits, and exhibits *on file, filed with his motion or subsequently filed with leave of court show that there is no substantial controversy as to any material fact.* The motion shall be accompanied by a concise written statement of the material facts as to which the movant contends no genuine issue exists and the reasons why summary judgment should be granted. Reference shall be made in the statement to the pages, paragraphs and/or lines of the depositions, admissions, answers to interrogatories and to requests for admissions, affidavits, exhibits and other materials *whether filed by the moving party or by the adverse party,* and a copy of the material relied on shall be attached to the statement.

　＊ ＊ ＊ " [Emphasis added.]

　　Since, as we appraise the record, no evidentiary materials were tendered below, the insurer's motion below must be treated as though it were one to dismiss for the petition's legal insufficiency rather than as one for summary judgment.[14] The critical question to be answered is hence whether the petition contains allegations sufficient to state a legally cognizable claim.[15] We hold that it does.

**12.** *Eckel v. Adair,* Okl., 698 P.2d 921, 924 [1985]; *Hamid v. Sew Original,* Okl., 645 P.2d 496, 497 [1982].

**13.** *Eckel v. Adair, supra* note 12 at 925.

**14.** The legal effect of *any* court-filed paper—be it a motion, a pleading or some other instrument—is to be measured by its content rather than by the author-provided title. *Ginn v. Knight,* 106 Okl. 4, 232 P. 936 [1925]; *Amarex, Inc. v. Baker,* Okl., 655 P.2d 1040, 1043 [1983]; *Horizons, Inc. v. KEO Leasing Co.,* Okl., 681 P.2d 757, 759 [1984]. See also, *Flick v. Crouch,* Okl., 434 P.2d 256, 262 [1967]. A motion for summary judgment that challenges only the pleadings is *functionally the same* as a motion to dismiss for failure to state a legally cognizable claim or for a judgment on the pleadings. *Beck v. Bacone College,* Okl.App., 604 P.2d 876, 877 [1980]. See also, *Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 273–274 [2d Cir.1968]; Wright, Miller & Kane, Federal Practice and Procedure § 2713 at 594 [1983].

**15.** A motion to dismiss for failure to state facts upon which relief may be granted tests the pleading's sufficiency to support a legally cognizable claim, while a motion for summary judgment tenders the case for adjudication upon application of law to *uncontroverted facts* which, on *all* material issues, support but a single inference in favor of the movant. Undisputed facts from which opposing inferences may be drawn present a disputed fact issue for trial. *Schmoldt v. Pan Am. W. Airways,* Okl., 767 P.2d 411, 414 n. 11 [1989]; *Flick v. Crouch, supra* note 14 at 262; see also, Wright, Miller & Kane, Federal Practice and Procedure, *supra* note 14 at 592–593.

Under our notice pleading regime a claim *must not* be dismissed for failure to state a legally cognizable demand *unless* it can be determined as a matter of law that the pleader cannot prove *any* set of facts that would warrant relief in his favor. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 [1957]; see also, Committee Comment to 12 O.S.Supp.1984 § 2012(B).

## II.

### THE PETITION ALLEGES FACTS WHICH *MIGHT* SUPPORT RECOVERY UNDER THE POLICY'S UNINSURED MOTORIST COVERAGE

The petition alleges that 1) while the insured was driving, an unidentified (hit-and-run) driver or passenger of another vehicle shot him; 2) as a result of the gunshot wound, the insured died and 3) his death was "caused by" the hit-and-run driver, or, in the alternative, "directly and proximately caused by the negligence" of that unidentified person. *Because these allegations accommodate a host of scenarios, some of which could be actionable, we cannot conclusively rule, as a matter of law and on the basis of plaintiff's petition alone, that her quest for UM protection will fail.*[16] The death could have been caused by a hit-and-run driver or occupant who, while target shooting from a moving or stationary vehicle, missed his *intended* mark and, instead, wounded the insured.[17] This scenario would unveil *prima facie* an unintentional act within the ambit of the insurance policy's hit-and-run UM coverage mandated by the provisions of 36 O.S.1981 § 3636.[18] The law requires *no physical contact with the offending vehicle for recovery under the hit-and-run UM protection.*[19]

In both the trial court and in the Court of Appeals this case was incorrectly treated as though the insurer had pressed for summary judgment rather than for the claim's dismissal. Even though the result reached by us today is similar to that of the Court of Appeals, that court's holding incorrectly settled the law of this case with respect to a significant part in controversy.[20] We will not speculate today on what the facts adduced at trial will show, or whether they will indeed develop into a scenario consistent with the parameters of the insurer's UM liability.[21]

---

**16.** Cf. *Fehring v. Universal Fidelity Life Ins. Co.*, Okl., 721 P.2d 796, 799 [1986]. There, the insured was found in a field beside his tractor—dead from a gunshot wound to the head. No firearm, cartridge case or other evidence of possible foul play was found. This court concluded that the death might have been caused by "a non-culpable accident[,] ... culpable negligence or by an intentional act."

**17.** According to the insurer's brief below, which is incorporated in the appellate record, one of the deposed witnesses stated that five shots were rapidly fired at the decedent's truck and that the insured was hit twice. Because this factual account does not qualify as an *admission against the insurer's interest,* and the deposition itself was not annexed to the summary judgment motion, we cannot treat the statement as supplementing the pleading's allegations. See *Womack v. City of Oklahoma City*, Okl., 726 P.2d 1178, 1181 [1986]. Deposition material that was not attached to the summary judgment motion does not constitute a part of the appellate record. *Estate of Whitlock, supra* note 9 at 863. Factual statements in the briefs, which do not rise to admissions against the author's interest, must be disregarded if unsupported by any material in the appellate record. *Eckel v. Adair, supra* note 12 at 924; *Frey v. Independence Fire and Cas. Co., supra* note 11 at 20.

**18.** The pertinent terms of 36 O.S.1981 § 3636 are:
"(A) *No policy* insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be issued,* delivered, renewed, or extended in this state ... *unless the policy includes the coverage described in subsection (B) of this section.*
"(B) The policy ... shall provide coverage ... *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of* uninsured motor vehicles and *hit-and-run motor vehicles because of* bodily injury, sickness or disease, including *death resulting therefrom. * * *"* [Emphasis added.]

**19.** *Biggs v. State Farm Mut. Auto. Ins. Co.*, Okl., 569 P.2d 430, 433–434 [1977].

**20.** On this appellate record, we refrain from answering the question whether the harm which caused the insured's death must be treated as an "accident."

**21.** For cases from other jurisdictions, in which UM coverage was held applicable in an automobile-related shooting, see, e.g., *Insurance Co. of North America v. Dorris*, 161 Ga.App. 46, 288 S.E.2d 856 [1982]; *Continental Western Ins. Co. v. Klug*, 415 N.W.2d 876 [Minn.1987]. For cases in which a UM claim arising from a shooting episode has been rejected, see, e.g., *Curtis v. Birch*, 114 Ill.App.3d 127, 69 Ill.Dec. 873, 448 N.E.2d 591 [1 Dist.1983]; *Sciascia v. American Ins. Co.*, 183 N.J.Super. 352, 443 A.2d 1118 [1982]; *Kish v. Central Nat. Ins. Group of Omaha*, 67 Ohio St.2d 41, 424 N.E.2d 288 [1981]. See also, *National American Insurance Company*

CERTIORARI IS GRANTED AND THE COURT OF APPEALS' OPINION IS VACATED; SUMMARY JUDGMENT FOR THE INSURER IS REVERSED AND THE CASE IS REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS PRONOUNCEMENT.

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN and KAUGER, JJ., concur.

SIMMS, ALMA WILSON and SUMMERS, JJ., dissent.

ALMA WILSON, Justice, dissenting:

The majority has misdefined the foundation issue in this case as purely contractual. However, an insurance contract involving uninsured motorist coverage cannot be construed independently of or adversely to the unequivocal, mandatory uninsured motorists policy stated at 36 O.S.1981 § 3636:

§ 3636 Uninsured motorist coverage

(A) No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the *ownership, maintenance or use of a motor vehicle* shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection (B) of this section.

(B) The policy referred to in subsection (A) of this section *shall provide coverage therein* or supplemental thereto *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and *hit-and-run vehicles* because of bodily injury, sickness or disease, *including death* resulting therefrom....

The statutory language, *above*, clearly mandates UM protection for an insured and such protection is not conditioned upon a wrongdoer's state of mind. The sole statutory condition of coverage is that an insured's bodily injury or death, to be compensable, must arise out of the ownership, maintenance or *use* of a motor vehicle. Thus, the threshold issue which must first be addressed in the present case is the propriety of the insurer's attempt to limit the scope of protection mandated by § 3636 by way of clauses inserted in UM insurance policies.

Here, the insurer has inserted a clause which makes UM protection contingent upon an *accidental* occurrence. I am of the opinion that this contingency impermissibly dilutes the statutorily mandated protection. Where, for example, a hit and run injury or death is involved, the state of mind of the unknown assailant is not only unknown, but bears zero relevance to the insured's expectation of protection pursuant to 36 O.S.1981 § 3636. The heavy burden which the majority lays upon an individual's right to recover under the mandatory provisions of § 3636 defeats the very policy espoused by the public law statute. This Court has previously examined with critical scrutiny policy provisions which purport to dilute the legislatively mandated uninsured motorist coverage. *Keel v. MFA Insurance Co.*, 553 P.2d 153 (Okla.1976); *Biggs v. State Farm Mutual Automobile Insurance Co.*, 569 P.2d 430 (Okla.1977); *Porter v. MFA Mutual Insurance Co.* 643 P.2d 302 (Okla.1982); *Lake v. Wright*, 657 P.2d 643 (Okla.1982); *Chambers v. Walker*, 653 P.2d 931 (Okla.1982); *Uptegraft v. Home Insurance Co.*, 662 P.2d 681 (Okla. 1983); *Heavner v. Farmers Insurance Company*, 663 P.2d 730 (Okla.1983); *State Farm Mutual Auto Insurance Co. v. Wendt*, 708 P.2d 581 (Okla.1985). Under the majority's conviction, however, a no-fault victim's statutorily based right of recovery may be thwarted by an impossible burden to prove the state of mind of some phantom tortfeasor. I cannot countenance such stance.

*v. Insurance Company of North America,* 74 Cal.App.3d 565, 140 Cal.Rptr. 828 [1st Dist., Div. 1 1977], where *liability* coverage was held applicable to a pedestrian's injuries caused by an egg thrown from a moving vehicle. As the court reasoned, the harm probably would not have occurred without the automobile's use and the injury's severity was partly attributable to the speed of the car from which the egg was thrown.

This is to no wise infer that an insurer is *prima facie* liable to provide coverage for "cold-blooded murder". The distinction, however, is not dependent upon an oblique state of mind maintained by an identified or unidentified third party tortfeasor; but rather, whether or not an independent intervening act has broken the *chain of causation* between the insured's injury and the *use* of an automobile. Accordingly, not all intentional acts are excluded from coverage, nor are all accidental occurrences inclusively covered. It is for the trier of fact to decide the causative factor, for there is no hard and fast rule which can encompass all eventualities. Each determination should be decided on a case by case basis dependent on the facts of each. See, e.g., *Georgia Farm Bureau Mutual Insurance Co. v. Burnett,* 167 Ga.App. 480, 306 S.E.2d 734 (1983); *Hicks v. Walker County School District,* 172 Ga.App. 428, 323 S.E.2d 231 (1984); Also, see, *Home Indemnity Company v. Lively,* 353 F.Supp. 1191 (W.D.Okla.1972), wherein the appropriate test was deemed to be the broader requirement of causal relationship or connection.

Today the majority errs in attempting to pigeon-hole coverable and uncoverable events according to an illusive state of mind concept.

I dissent.