**STATE of Oklahoma ex rel. G.E. HETTEL, Appellant,**

v.

**SECURITY NATIONAL BANK & TRUST COMPANY IN DUNCAN, a national banking corporation et al., Appellees.**

No. 82003.

Supreme Court of Oklahoma.

April 16, 1996.

Rehearing Denied Sept. 13, 1996.

Phillip W. Redwine, Terry Guy Shipley, and Henry W. Kappel, Norman, for Appellant, State of Oklahoma ex rel. G.E. Hettel.

Robert Todd Goolsby, Oklahoma City, for Board of County Commissioners of Grady County and Rosalee Nath, County Treasurer of Grady County, State of Oklahoma.

Wayne Dabney Chickasha, for Chickasha Bank & Trust Company.

Andrew M. Coats, Oklahoma City, T.M. Weaver and Henry Bonney, Duncan, for Appellee, Security National Bank & Trust Co. in Duncan.

John N. Hermes and Sheryl Barr, Oklahoma City, for Appellees, First National Bank & Trust of Holdenville and Cement Bank.

Robert S. Payne and Stuart A. Knarr, Oklahoma City, for Appellee, Bank of Verden.

Phil W. Gordon, Chickasha, for Appellee, Landman Oil and Gas, Inc.

KAUGER, Vice Chief Justice:

The issue presented on certiorari is whether the trial court erred in granting summary judgment because the evidentiary materials do not eliminate certain implicit fact issues concerning the legality of the bond issue and the disbursement of the bond proceeds. We find that it did.

## FACTS

This cause concerns a *qui tam* action [1] filed pursuant to 62 O.S.1991 §§ 372 and 373 [2] by the appellant, G.E. Hettel (Hettel), a resident taxpayer of Grady County, Oklahoma, against the Chickasha Bank & Trust Company (Chickasha) and four other banks—Security National Bank & Trust of Duncan (Security), First National Bank & Trust of Holdenville (First National), Bank of Verden (Verden), and Cement Bank (Cement) (collectively, the participating banks)—which participated in loans originating from the Chickasha Bank; and against the Landman Oil & Gas Company (Landman).

On July 6, 1981, the Board of County Commissioners of Grady County (Commissioners) authorized an election relating to the proposed issuance of general obligation limited tax bonds to provide $3,700,000.00 to secure and develop industry in Grady County, Oklahoma. An election was held on August 11, 1981, and the proposition was approved by the voters.

The next year, the Chickasha Bank began a lending relationship with Carl Greene, Jr. (Greene) and with the companies he owned and operated in Chickasha, Oklahoma—Carl–Built, Inc. (Carl–Built), Chickasha Trailer Parts, Inc., Chickasha Superior Coach, and Landman Oil & Gas, Inc. (Landman). Carl–Built manufactured steel products which were used as parts for school bus bodies and Landman engaged in oil and gas development. From the onset of his relationship with the Chickasha Bank and through Sep-

---

1. A *qui tam* action is a civil action brought on behalf of a public body under a statute which establishes a penalty for the commission or omission of a certain act, with part of the recovery going to the one bringing the action on behalf of the public body, and the rest going to the public body. *State ex rel. Trimble v. City of Moore,* 818 P.2d 889, 891 (Okla.1991).

2. Title 62 O.S.1991 §§ 372 and 373, see note 11, infra.

tember of 1986, Greene and his companies incurred a large amount of debt to the bank through various loans and credit extensions (collectively, the Greene loans). These loans were cross-collateralized so that the bank owned interests in all of Greene's business entities. By mid–1986, Chickasha Bank held over $2,800,000.00 in notes and guaranties from Greene and his companies.

In 1984, Greene submitted a proposal to the Grady County Industrial Authority (Authority) alleging that with the assistance of a $1,750,000.00 financing package, he could expand his steel manufacturing business to assemble school buses, thereby increasing employment in Grady County. In 1986, Greene approached the Authority about securing $4,000,000.00 in order to convert and expand his Carl–Built manufacturing plant to assemble school buses. On October 3, 1986, the Authority approved Greene's proposed expansion, and it obtained a $1,000,000.00 commitment for supplemental financing from the Oklahoma Industrial Finance Authority. It also recommended to the Grady County Commissioners that they issue bonds for $3,500,000.00 to assist Carl–Built in its proposed expansion.

On October 22, 1986, the Commissioners resolved to issue $3,500,000.00 of the $3,700,-000.00 in general obligation bonds which had been approved in 1981. The Attorney General of the State of Oklahoma endorsed the bonds on November 26, 1986.[3] Carl–Built executed a promissory note on December 1, 1986, to Grady County for $3,500,000.00 secured by a first mortgage and security interest on all Carl–Built property. The bonds were sold, after public notice, and delivered to the sole bidder, Chickasha Bank in December of 1986.

■ The participating banks had acquired portions of the Greene loans from the Chickasha Bank through loan participation agree-

ments throughout Greene's relationship with Chickasha Bank.[4] Hettel insists that by mid–1985, Greene's financial ability to pay his loans to the banks was clearly in jeopardy, and that it was about this time when Lindell Pettigrew, who was the president of both the Chickasha and Cement Banks and the Chairman of the Grady County Industrial Authority, convinced the Grady County Commissioners to issue the $3,500,000.00 bond in favor of Carl–Built. From as early as 1983, until the bond issue was approved by the commissioners, the Cement, Verden, Holdenville and Security banks had occasionally acquired portions of the Chickasha Bank's loans to Greene and his companies. By the time the bond issue was approved, the Verden and Cement Banks were participating in almost $300,000.00 of a nearly $900,000.00 note which was made by Carl–Built and which was due in January of 1987. After the bond issue, Holdenville and Security Banks acquired portions of that loan and Security bank participated in other Greene loans as well. On January 6, 1987, the Grady County Treasurer disbursed $2,800,000.00 of the bond proceeds to the Chickasha Bank and the participating banks in amounts corresponding to their respective participation in the Greene loans.

Carl–Built defaulted on its 1986 note to Grady County. The New Bus Company, a Delaware partnership bought Carl–Built in 1988, and assumed its obligations, including those under the 1986 note. It also defaulted, and the County was faced with the possibility of levying additional property taxes on its residents to cover the principal and interest on the bonds. In June of 1989, the Commissioners and the Chickasha Bank commenced a foreclosure suit against Greene and his companies. Shortly after the foreclosure suit, Carl–Built merged with Landman.

**3.** See, Title 62 O.S.1991 § 11 which provides that the Attorney General is the state's ex officio Bond Commissioner.

**4.** A loan participation is a shared loan. One bank, usually referred to as the lead bank divides a large loan into shares and then offers them for sale to other participating banks. The relationship among the lead and participants is governed

by the terms of the participation agreement or certificate. Armstrong, "The Developing Law of Participation Agreements," 23 Bus.Law. 689 (1968). See also, Ledwidge, "Loan Participations Among Commercial Banks," 51 Tennessee Law Review 519 (1984); Hutchins, "What Exactly is a Loan Participation?" 9 Rutgers Camden Law Journal 447 (1978).

On December 29, 1989, Hettel filed a *qui tam* action pursuant to 62 O.S.1991 §§ 372 and 373,[5] against the Chickasha Bank & Trust, the four participating banks, the Landman Oil & Gas Company, the New Bus Company, the Grady County Commissioners and the Grady County Treasurer in an attempt to recover the County's money from the banks.[6] He alleged that: 1) Grady County was improperly primarily liable to the banks because the proceeds from the 1986 bond issues were fraudulently and unlawfully used to retire private antecedent debt owed to the lead and participating banks;[7] 2) Landman Oil, as a successor to Carl–Built, benefitted from the unlawful bond issue by using money from the Greene loans and the bond proceeds to engage in oil and gas development; and 3) the participating banks had full knowledge of the fraudulent and unlawful purpose of the bond issue because they were aware that a vast majority of the debt retired by it was an antecedent debt rather than a debt relating to the expansion of its bus manufacturing operation.

Hettel sought to rescind the bond issue and the banks moved for summary judgment, arguing that pursuant to 62 O.S.1991 § 13, the bond's validity was no longer contestable.[8] On December 4, 1990, this Court in *Chickasha Bank & Trust Company v. Winchester,* No. 76,306, assumed original jurisdiction and issued a writ prohibiting the trial court from proceeding on claims relating to the validity of the bond.

On April 30, 1991, in *State of Oklahoma,* ex rel. *G.E. Hettel v. Winchester,* No. 77,129, we again assumed original jurisdiction and issued an order which recognized that the only relief precluded by our December 4, 1990, order was the challenge of the bond's validity. The trial judge was allowed to proceed and adjudicate all other matters raised by the parties and their pleadings. The banks and Landman moved for summary judgment, and on June 28, 1993, the trial court, giving no basis for its ruling, denied Chickasha Bank's motion for summary judgment, but granted summary judgment in favor of the four participating banks and Landman.

5.  Title 62 O.S.1991 §§ 372 and 373, see note 11, infra.

6.  Hettel through various amendments to his petition asserts claims for injunctive relief, the imposition of a constructive trust on the funds which were paid to the banks, a continuing conspiracy by the banks, security fraud under state and federal law, as well as recovery of the *qui tam* penalty.

7.  Hettel asserts that the bonds were issued in violation of the Okla. Const., art. 10 §§ 14, 17, 19 and 35. The Okla. Const. art. 10, § 14 provides in pertinent part:

    "Taxes shall be levied and collected by general laws, and for public purposes only ..."

    The Okla. Const. art. 10, § 17 provides in pertinent part:

    "The Legislature shall not authorize any county or subdivision thereof, city town, or incorporated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual."

    The Okla. Const. art. 10, § 19 provides in pertinent part:

    "Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one pur-

    pose shall ever be devoted to another purpose."

    The Okla. Const. art. 10, § 35 provides in pertinent part:

    "(a) Any incorporated town and any county may issue, by and with the consent of the majority of the registered voters of said municipality or county voting on the question at an election held for the purpose, bonds in sums provided by such majority at such election for the purpose of securing and developing industry within or near the said municipality or county holding the election...."

8.  Title 62 O.S.1991 § 13 provides:

    "... It shall be the duty of the Bond Commissioner to prepare uniform forms and prescribe a method of procedure under the laws of the state in all cases where it is desired to issue public securities or bonds, in any county, township, municipality or political or other subdivisions thereof of the State of Oklahoma; and it shall be the further duty of said Bond Commissioner to examine into and pass upon any security so issued and such security, when declared by the certificate of said Bond Commissioner to be issued in accordance with the forms of procedure so provided shall be incontestable in any court in the State of Oklahoma unless suit thereon shall be brought in a court having jurisdiction of the same within thirty (30) days from the date of the approval thereof by the Bond Commissioner."

Subsequently, the trial court stayed Hettel's *qui tam* action against the Chickasha Bank pending the appeal of its summary judgment order. The Court of Appeals in an unpublished opinion affirmed the trial court. It found that: 1) Hettel failed to present any evidence that any of the participating banks had any knowledge concerning the legality of the bond issue and the subsequent disbursement of its proceeds; and 2) because Hettel failed to plead a new claim for relief against Landman after our disposition of *Chickasha Bank & Trust Co. v. Winchester*, No. 76,306, Landman should not remain a party to the cause. We granted certiorari on January 29, 1996, to determine whether the trial court erred in granting summary judgment.

## THE EVIDENTIARY MATERIALS DO NOT TOTALLY ELIMINATE CERTAIN IMPLICIT FACT ISSUES.

We note at the outset that this cause presents unusual circumstances because neither the Chickasha Bank, the bank which originated all of Greene's loans, nor its president, Lindell Pettigrew are parties here. The trial court denied their motions for summary judgment, and they have not appealed the trial court's order. Nor has their liability under 62 O.S.1991 §§ 372 and 373 been determined because the trial court stayed Het-

tel's claims against them pending the present appeal.

The gravamen of Hettel's *qui tam* action is not that the stated purpose of the bond issue—securing and developing industry—was illegal. Rather, he claims that the proceeds of the bond were used to retire private, otherwise unrecoverable unrelated antecedent debt incurred by Greene and his affiliates; and that this use was contrary to the bond issue approved by the voters of Grady County to secure and develop industry.[9]

### a.

### The Participating Banks

Hettel asserts that the trial court erred in granting summary judgment to the participating banks because material fact questions exist concerning whether each bank had knowledge that the bond proceeds would be used for a fraudulent and unlawful purpose.[10] The participating banks contend that there are no disputed fact issues existing which could support a finding which would establish *qui tam* liability for any allegedly fraudulent or unlawful bond issue.

■ Title 62 O.S.1991 §§ 372 and 373 provides the authority for *qui tam* liability.[11]

---

9. The banks argue that the bond issue was for a legitimate public purpose like the sales tax which was levied in *Burkhardt v. City of Enid*, 771 P.2d 608, 611 (Okla.1989) to purchase a private university. However, *Burkhardt* is not dispositive because Hettel's claims include allegations that the public was defrauded by the Chickasha Bank and its president because the proceeds of the bond were used for purposes contrary to the bond issue. Because Hettel's claims against the Chickasha Bank and Pettigrew have not proceeded past summary judgment, their liability has not been determined. Clearly, at least reasonable inferences can be drawn from Hettel's evidentiary material that the public was defrauded and that the use of the bond proceeds was unlawful. Similarly, reasonable inferences can be drawn that the participating banks had the requisite knowledge to establish *qui tam* liability.

10. Hettel also asserts that the participating banks are liable under an agency relationship with the Chickasha Bank through the participation agreements. However, because we find that summary judgment was improper, independent of any agency status of the participating banks, we need not address this issue.

11. Title 62 O.S.1991 § 372 provides in pertinent part:

"Every officer of the state and of any county ... who shall hereafter order or direct the payment of any money or transfer of any property belonging to the state or to such county ... in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the state or any such county ... by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the state [or] county for triple the amount of all such sums of the money so paid, and triple the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the state or such county ... or of any resident taxpayer thereof, as hereinafter provided."

# 606

Section 372 authorizes a triple penalty against state or municipal officers and "every person, having notice of the facts" who either makes a contract with the county or receives a benefit involving the improper payment of money or the improper transfer of property. Section 373 allows resident taxpayers to bring an action to recover the § 372 penalty, or to recover any money expended by the county if the appropriate officer fails or refuses to bring the action after demand by ten taxpayers. The taxpayer bringing the action is entitled under § 373 to one half of the amount recovered as a reward.[12]

■ The *qui tam* statutes, like any penal statutes, are strictly construed.[13] In *Dowler v. State ex rel. Prunty*, 179 Okla. 532, 66 P.2d 1081, 1083 (Okla.1937) this Court, in the thirteenth syllabus, stated that:

"In an action for the penalty imposed by section 5964, O.S.1931 (62 Okl.St.Ann. § 372), against one not an officer of the municipality, the burden is on the plaintiff to show that the party receiving the money

had notice that the contract under which it was paid, or the payment itself, was unlawful, fraudulent, or void."

The contracts involved here are: 1) the agreement between the Authority and Carl–Built to issue the bonds; 2) the bond sale contract between Grady County and the Chickasha Bank; and 3) the 1986 note and related mortgage and security interest.

■ Pursuant to Rule 13, 12 O.S.1991, Ch. 2 App., Rules for the District Courts, a motion for summary judgment may be filed if the pleadings, depositions, interrogatories, affidavits and other exhibits reflect that there is no substantial controversy pertaining to any material fact.[14] Summary judgment is proper only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law.[15] All conclusions drawn from the evidentiary material submitted to the trial court are viewed in the light most favor-

Title 62 O.S.1991 § 373 provides in pertinent part:

"Upon the refusal, failure, or neglect of the proper officers of the state or of any county ... after written demand made upon them by ten resident taxpayers of the state or such county ... to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to the state, or such county ... paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made, by any of its officers for the state or any such county .. or for the penalty provided in the preceding section, [372] any resident taxpayer of the state or such county ... affected by such payment or transfer after serving the notice aforesaid and after giving security for cost, may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the State [or] county ... might institute and maintain for the recovery of such property, or for said penalty; and such municipality shall in such event be made defendant, and one-half the amount of money and one-half the value of the property recovered in any action maintained at the expense of a resident taxpayer under this section, shall be paid to such resident taxpayer as a reward."

References to §§ 372 and 373 are to their current versions. Prior to 1982, § 372 provided for double, rather than triple damages. Section 373 has remained unchanged since 1955.

12. *State ex rel. Schones v. Town of Canute*, 858 P.2d 436, 439 (Okla.1993); *State ex rel. Trimble v. City of Moore*, see note 1 at 894, supra; *State ex rel. Remy v. City of Norman*, 642 P.2d 219, 223 (Okla.1981).

13. *State ex rel. Twist v. Bailey*, 295 P.2d 763, 764 (Okla.1956); *State ex rel. Woods v. Elk City*, 178 Okla. 521, 62 P.2d 1203, 1204 (Okla.1937).

14. *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 163 (Okla.1989); Rule 13, 12 O.S.1991, Ch. 2 App., Rules for the District Courts, provides in pertinent part:

"a. A party may move for judgment in his favor on the ground that the depositions, admissions in the pleadings, stipulations, answers to interrogatories and to requests for admissions, affidavits, and exhibits on file ... show that there is no substantial controversy as to any material fact ...
b. If the adverse party ... wish[es] to oppose the granting of the motion, they shall serve on the moving party and file ... a concise written statement of the material facts as to which he or they contend a genuine issue exists ... The adverse party shall attach to the statement affidavits and other material containing facts that would be admissible in evidence ..."

15. *Carris v. John R. Thomas & Assoc.*, 896 P.2d 522, 530 (Okla.1995); *Roach v. Atlas Life Ins. Co.*, see note 14, supra.

able to the party opposing the motion.[16] Summary judgments are not favored and they should be granted only where it is perfectly clear that there are no issues of material fact.[17]

██ Hettel presented evidentiary material which alleges that: 1) each of the participating banks had a history of participating in the Greene loans prior to the bond issue; 2) bank officers of Security bank were aware of the financial condition of Greene and his businesses prior to and at the time the bond money was loaned to Carl–Built; 3) Greene's financial ability to pay the Chickasha Bank was questionable, and all of his businesses were cross-collateralized; 4) in addition to being the Chairman of the Grady County Industrial Authority and the president of the Chickasha Bank, Lindell Pettigrew was also the president of the Cement Bank; [18] 5) each of the participation agreements negotiated by the participating banks provided that they would make an independent determination of the financial information and creditworthiness of Carl–Built; and 6) all the banks received proceeds from the bond issue which allegedly paid-off antecedent debt.

██ Considering the various circumstantial evidence Hettel presents and the inti-

mate relationships between the banks, we cannot say that it is perfectly clear that these evidentiary materials totally eliminate fact issues concerning the participating banks' access to knowledge of the lawfulness of the bond issue and whether the public was defrauded.[19] Accordingly, the trial court erred in granting summary judgment.

## b.

### Landman

██ Landman argues that summary judgment was proper because although Hettel's original petition sought to cancel and rescind the bonds and all related contract documents, after this Court's order on December 4, 1990, he abandoned his claim for rescission. Hettel has neither asserted any subsequent claim for damages nor any other relief against Landman, and the pretrial conference order does not reflect that damages have been asserted against Landman. Hettel also alleges that the trial court erred when it granted summary judgment in favor of Landman because he was not required to amend his pleadings in order to recover damages from Landman in pursuit of its *qui tam* claim.[20]

16. *Ross v. City of Shawnee,* 683 P.2d 535, 536 (Okla.1984).

17. *Erwin v. Frazier,* 786 P.2d 61, 62–63 (Okla. 1989); *Flanders v. Crane Co.,* 693 P.2d 602, 605 (Okla.1984).

18. A corporation is generally charged with knowledge which its officer or agent receives or acquires while acting in the course of employment regardless of whether the officer or agent in fact communicates such knowledge to the corporation. *Operators Royalty & Producing Co. v. Greene,* 173 Okla. 388, 49 P.2d 499, 502 (Okla. 1935). See also, *F:D.I.C v. Ernst & Young,* 967 F.2d 166, 170 (5th Cir.1992) (Recognizing that under Texas law, a bank officer's knowledge is imputable to the bank unless the officer acts with an interest adverse to the bank and that whether ⟩ an employee's fraud is attributable to a corporation depends on whether the fraud was on behalf of the corporation or against it.).

19. Burdens of proof may be met at summary judgment by circumstantial evidence. *Indiana National Bank v. State Dept. of Human Services,* 857 P.2d 53, 60 (Okla.1993); *Manora v. Watts Regulator Co.,* 784 P.2d 1056, 1058 (Okla.1989). Hettel's evidentiary material includes the opinion

of an expert witness regarding what the participating banks either knew or should have known. The banks contend that the expert opinion may not be relied upon to determine whether summary judgment was proper. However, we need not address this issue nor the banks motion to ⟩ strike alleged misstatements by Hettel in his brief in chief because the other evidence presented by Hettel presents a material fact question.

20. Hettel argues that pursuant to 15 O.S.1991 § 233(B) no amendment to his pleadings was necessary. Title 15 O.S.1991 § 233(B) provides:

"In an action, counter claim, cross claim or plea in intervention based on the theory of rescission of a contract, the court shall adjust the equities between the parties, and although the action is tried to a jury, the court may require the party to whom relief based on rescission is granted to make that compensation to the other party which may be required. If the court determines that the relief to which the party may be entitled, whether or not such relief is sought in the pleadings."

This statute applies to actions in which recision of a contract is sought. It allows the trial court to grant damages or any other relief the plaintiff may be entitled to, regardless of whether the

608

In Hettel's third amended petition, he specifically abandoned any claims for contract recision.[21] However, in his response for summary judgment Hettel asserts that, although he no longer seeks contract rescission, the evidentiary material shows that Landman had knowledge of all the alleged illegal, unconstitutional, and fraudulent acts and that it received benefit from them.[22] Recently, in *Liberty Bank & Trust Co., v. Bachrach*, 916 P.2d 1377 (Okla.1996),[23] we found that an answer, which failed to include the affirmative defense of failure to give timely notice of dishonor, should be amended when the parties' had already litigated the

issue.[24] We relied on *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1524 (9th Cir.1995), which involved a plaintiff who had failed to raise certain claims in the complaint but who had raised the claims in the response to a motion for summary judgment, and said:

" '[W]e consider them because when a party raises a claim in material filed in opposition to a motion for summary judgment, the district court should treat the filing as a request to amend the pleading....' "

■ The rules of pleading both at trial and at appellate levels have been liberalized to allow the court to focus its attention on the

relief is sought in the pleadings. However, § 233(B) is inapplicable here. In Hettel's third amended petition, he specifically abandoned any claims he made for contract recision.

21. Hettel's third amended petition provides in pertinent part:

"... Pursuant to the Order of the Oklahoma Supreme Court entered December 4, 1990, Plaintiff herein withdraws his request for an Order of the Court canceling and holding null and void the general obligation bonds subject of this action, which said request is made in paragraph 30a (page 13) and paragraph 2 (page 15) of Plaintiff's original Petition ..."

22. Hettel's response for summary judgment provides at p. 23:

"H. Plaintiff admits that it originally brought Landman into this suit for purposes of rescission and sought no actual damages from this defunct corporation. Because of the order of the Supreme Court declaring Plaintiff may not recover the remedy of recession of the bonds, which remedy would have forced the rescission of the underlying contracts, Landman is correct in its position that Plaintiff cannot recover a judgment of rescission against it. Landman is incorrect, however, when it proposes that no damages may be awarded against it because damages were not requested in Plaintiff's prayer for relief. The evidence submitted and referred herein clearly shows Landman had knowledge of all the unconstitutional and fraudulent acts, and received benefit therefrom. Damages may be awarded. 15 O.S. § 233(B)."

23. Mandate has not yet issued.

24. Title 12 O.S.1991 § 2015 provides in pertinent part:

"A. AMENDMENTS. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the

pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it any time within twenty (20) days after it is served. Amendments to add omitted counterclaims or to add or drop parties may be made as a matter of course within the time specified above. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall respond to an amended pleading within the time remaining for response to the original pleading or within ten (10) days after the service of the amended pleading, whichever period may be longer, unless the court otherwise orders.
B. AMENDMENTS TO CONFORM TO THE EVIDENCE. When issues not raised by the pleadings or by the pretrial conference order, where the order has superseded the pleadings, are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings or the pretrial conference order. Such amendment as may be necessary to cause the pleadings or the pretrial conference order to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings or the pretrial conference order, the court may allow the pleadings or the pretrial conference order to be amended and shall do so freely when the presentation of the merits of the action will be served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
Where the pretrial conference order has superseded the pleadings, it is sufficient to amend

substantive merits of a dispute rather than upon procedural niceties.[25] The legal effect of any court-filed paper, including a motion or pleading, is measured by its content rather than by the author provided title.[26] Here, Hettel, in his response to Landman's motion for summary judgment asserted his *qui tam* claim against Landman.[27] The trial court should have treated this portion of Hettel's response for summary judgment as a request to amend the pleadings.[28] Accordingly, the trial court erred in granting summary judgment in favor of Landman.

## CONCLUSION

Summary judgment is proper only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law.[29] All conclusions drawn from the evidentiary material submitted to the trial court are viewed in the light most favorable to the party opposing the motion.[30] Because the evidentiary material does not totally eliminate certain implicit fact issues, the trial court erred in granting *summary judgment* in favor of the Banks. Although Hettel abandoned his claim for recision, he sought *qui tam* relief from Landman in his response to summary judgment.[31] The trial court should have treated this as a request to amend. Consequently, the trial court erred in granting summary judgment to Landman.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT REVERSED.**

ALMA WILSON, C.J., LAVENDER and OPALA, JJ., and JOHNSON S.J., concur.

HARGRAVE, SUMMERS and WATT, JJ., concur in part, dissent in part.

SIMMS, J., dissents.

JOHNSON, S.J., in lieu of HODGES, J., who disqualified.

the order and the pleadings shall not be amended."

**25.** *Markwell v. Whinery's Real Estate, Inc.*, 869 P.2d 840, 842 (1994).

**26.** *Hulsey v. Mid–America Preferred Ins. Co.*, 777 P.2d 932, 936 (Okla.1989); *Horizons, Inc. v. Keo Leasing Co.*, 681 P.2d 757, 759 (Okla.1984); *Amarex, Inc. v. Baker*, 655 P.2d 1040, 1043 (Okla. 1982).

**27.** Title 62 O.S.1991 §§ 372 and 373, note 11, supra. See note 22, supra.

**28.** *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1524 (9th Cir.1995). Title 12 O.S.1991 § 2015, see note 24, supra. See also, *Liberty Bank & Trust v. Bachrach*, 916 P.2d 1377 (Okla.1996).

**29.** *Carris v. John R. Thomas & Assoc.*, see note 15, supra; *Roach v. Atlas Life Ins. Co.*, see note 15, supra.

**30.** *Ross v. City of Shawnee*, see note 16, supra.

**31.** Title 62 O.S.1991 §§ 372 and 373, see note 11, supra. See note 22, supra.