2017 OK 74

GREEN TREE SERVICING LLC.,
PLAINTIFF/APPELLEE,

v.

James DALKE,
DEFENDANT/APPELLANT.

Case Number: 115335

Supreme Court of Oklahoma.

Decided: 09/26/2017

Melvin R. McVay, Jr., Candace Williams Lisle, Oklahoma City, Oklahoma, Mathew O'Hair Stromquist, Chicago, Illinois, Tom M. Moore, Edmond, Oklahoma, for Plaintiff/Appellee.

Michael Wilson, Lawton, Oklahoma, for Defendant/Appellant.

KAUGER J.:

¶1 We granted certiorari to address whether disputed questions of material fact exist which precludes summary judgment. We hold that because multiple disputed material facts exist, summary judgment was premature.

## FACTS

¶2 In September of 1999, the defendant/appellant, James A. Dalke (Dalke) purchased a 2000 Elliot Solitaire Mobile Home for $46,763. He paid $7,100.00 down, and financed the remaining $39,877.00 with the plaintiff/appellee, Green Tree Servicing, LLC. (Green Tree).[1] The loan was perfected on September 29, 1999, at an 11.25% interest rate over 30 years. This resulted in 360 monthly payments of $387.31 totaling $139,431.60. Consequently, the cost for financing $39,877.00 for a mobile home valued at less than $47,000.00, totaled approximately $146,531.00, when the down payment is included.

¶3 After making half of the total payments for fifteen years, Dalke neglected six months worth of payments from December 2014 to June 2015, resulting in arrearages of $3,346.00. Dalke's loan agreement allowed for an opportunity to cure the defect during the default period in which the borrower could cure failed payments to get back on schedule.[2] The loan agreement also gave the creditor the option to repossess the mobile home and/or accelerate the loan by demanding the remaining balance while still accruing interest until the whole balance was paid.[3]

¶4 On June 22, 2015, Green Tree filed a lawsuit against Dalke, alleging that Dalke owed $49,900.34 for the remaining balance on the mobile home, not including attorney fees and other costs which they also sought. By this time, Dalke would have paid approximately $70,000 for the $39,877.00 he financed. Dalke did not hire a lawyer, but, instead, proceeded *pro se*. He alleged in his *pro se* answer filed July 29, 2015, that before Green Tree initiated the lawsuit, Dalke attempted to cure his default, but Green Tree prohibited him from doing so.

¶5 According to Dalke, the Choctaw Nation sent Green Tree a check for $1,454.00 to cover a portion of his $3,346.00 default. The check was cashed on June 2, 2015, and it cleared the Bank on June 9, 2015. However, Green Tree denied ever receiving it and told Dalke that his payment must be made with a single check. While Dalke waited for the cleared check to be returned, Green Tree filed its lawsuit. Dalke continued to try to make contact with Green Tree to cure the

---

**1.** Green Tree merged into a surviving limited liability company on August 31, 2015, known as: DT Holdings L.L.C., a Delaware limited liability company, and Ditech Mortgage Corp, a California corporation. However, for purposes of this opinion, we refer to them only as Green Tree.

**2.** The loan agreement is attached to the petition, and it provides in pertinent part on page 2, under article 11. DEFAULT:

... You will give me notice of the default except when I voluntarily surrender or abandon the Manufactured Home. I will have the right to cure the default during the notice period. If I do not cure the default, you may do either or both of the following: (a) Acceleration: You can require me to immediately pay you the entire remaining balance of this Contract less the refund described in the Prepayment Refund paragraph above; and/or (b) Repossession: You can repossess the Manufactured Home. ...

**3.** See discussion note 1, supra.

default. An employee named "James" continued to deny receiving the check. Dalke then advised him that he could fax them a copy of the front and back of the check that cleared. "James" then checked and admitted that they had cashed the check and put it in the wrong file, but they were sending the funds back because they would not accept two separate payments.

¶ 6 The funds were still not returned to the Choctaw Nation by July of 2015. Dalke documented eight different times that he called Green Tree between July 14th and July 20th. He was told by two different employees that they still had the check; that the note needed a payment of $478.00; and the rest would be deferred. Dalke allegedly had another check sent for $480.00 to cover the required amount, but it was never cashed. Dalke again reached "James" on July 20th who said Green Tree needed $2,309.34 by the 28th, insisting that whomever Dalke talked to previously was wrong.

¶ 7 On October 13, 2015, Green Tree filed a motion for summary judgment, arguing that: 1) Dalke was $3,346.00 in arrearage, and that no additional payments had been made since June 10, 2015; and 2) because the account was in arrearage, no disputed material facts existed and summary judgment was proper. However, an affidavit from a foreclosure supervisor acknowledges the receipt of a $1,454.00 check from the Choctaw Nation, but he insisted that it was not received until July 31, 2015—almost two months after it was allegedly cashed.

¶ 8 Dalke did not respond to the motion for summary judgment. A hearing on the summary judgment motion was held on December 3, 2015, in which the trial court granted summary judgment and awarded Green Tree the relief they sought: 1) $49,900.34 for the remaining balance on the loan and repossession; 2) attorney fees of $1,000.00; and 3) interest of $11.63, or 8.5%, accruing daily beginning May 27, 2015, until paid.

¶ 9 On December 15, 2015, Dalke filed a motion to vacate the summary judgment ruling and stay the repossession. He alleged, with supporting documentation, that he suffers from a traumatic brain injury that affects his short term memory and anxiety attacks which caused him to miss the December 3, 2015 hearing. He asserted that he can defend against the repossession and requested the opportunity to work something out so he could keep his home. Dalke attached ten pages of medical documents to his motion as evidence of his brain injury, anxiety, and memory loss. Green Tree filed an objection to the motion to vacate on December 31, 2015.

¶ 10 By February 16, 2016, Dalke was no longer *pro se*. Legal Aid Services of Oklahoma represented Dalke. On March 10, 2016, the trial court granted Dalke's motion to vacate and reset the hearing on summary judgment for April 21, 2016. On March 25, 2016, Dalke filed a response to the motion for summary judgment which asserted affirmative defenses and counterclaims. Attached, in contradiction to Green Tree's affidavit, was a copy of two checks for Green Tree on Dalke's behalf for $1,954.00 which were issued by Choctaw Nation from two payments—one for $1,454.00 and the other for $480. The first check showed it cleared on June 9, 2015.

¶ 11 Dalke alleges he could pay the remainder of what the Choctaw Nation did not pay and that Green Tree insisted that it would not accept both a payment from Dalke and the Choctaw Nation in two separate checks, but required a single check. Additionally, Green Tree did not return the Choctaw Nation's funds until August of 2015, even though they insisted that one check be issued, and filed the lawsuit on June 22, 2015.

¶ 12 Dalke argued that: 1) an accord and satisfaction had been reached under the Uniform Commercial Code (UCC), 12A O.S. 2011 3-311 before Green Tree filed the lawsuit;[4] 2)

---

4. 12A O.S. 2011 3-311, Accord and Satisfaction by use of an instrument, provides:
   (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona

fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
   (b) Unless subsection (c) of this section applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written com-

Green Tree did not act in good faith, but rather engaged in deceptive trade practices;[5] and 3) that the security agreement itself gave Dalke the right to cure the default before repossession occurred.[6] Dalke also claims that Green Tree went out of its way to obstruct his rights to pay and misrepresented the facts in the affidavit and that material fact questions exist which preclude summary judgment.

¶ 13 On April 21, 2016, the trial court granted Green Tree's motion for summary judgment and granting repossession. The attempted payment by the Choctaw Nation is not specifically mentioned in the order. The trial court found that "there was no enforceable agreement reached between the parties to modify the underlying contract as to when payments were due." The court then re-entered judgment for $49,900.34, plus costs, plus $2,100.00 attorney fees, and $11.63 in interest accruing daily from May 27, 2015.

¶ 14 On May 2, 2016, Dalke filed a motion to reconsider, which the trial court denied on August 11, 2016. Dalke appealed to the Court of Civil Appeals, which affirmed the trial court in an unpublished opinion on March 3, 2017. We granted certiorari on June 26, 2017.

## MATERIAL FACT QUESTIONS PRECLUDE SUMMARY JUDGMENT.

¶ 15 At the outset, we note that Green Tree, in its Answer to Petition for Writ of Certiorari, insists that Dalke neither pleaded nor pursued any contract related claims. In other words, Dalke's *pro se* answer of stating all the facts without giving a clear legal response should foreclose his opportunity to demonstrate breach of contract, accord and satisfaction, or any other claim. Dalke argues that his *pro se* allegations fully described the breach and Green Tree's deceptive conduct. He also argues that when counsel did enter the case, rather than responding to the Green Tree's original petition, counsel was given leave to respond to Green Tree's motion for summary judgment. Counsel's response to the motion for summary judgment based legal responses to all of the factual allegations previously advanced by Dalke.

¶ 16 We agree with Dalke that his factual allegations at least put Green Tree on notice of his defenses. This is consistent with the principles of pleading which are meant to give fair notice, rather than allow disposition

munication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
(c) Subject to subsection (d) of this section, a claim is not discharged under subsection
(b) of this section if either of the following applies:
(1) The claimant, if an organization, proves that (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (ii) the instrument or accompanying communication was not received by that designated person, office or place; or
(2) The claimant, whether or not an organization, proves that within ninety (90) days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that sent a statement complying with subparagraph (i) of paragraph (1) of this subsection.
(d) A claim is discharged if the person against whom the claim is asserted proves that within

a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.
Title 12 O.S. 2011 2008 provides for the affirmative defense of accord and satisfaction:
C. AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively:
1. Accord and satisfaction; ...

5. Title 15 O.S. 2011 752 provides in pertinent part:
...13. "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;
14. "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;...

6. See, the Loan Agreement, note 2, supra.

purely on technicalities. In Wilson v. Webb, 2009 OK 56, ¶ 9, 221 P.3d 730 we said:

> The Oklahoma Pleading Code, 12 O.S. 2001 2001 et seq. was adopted in 1984 to replace form pleading requirements. The general philosophy of the Pleading Code is that pleadings should give fair notice of the claim and be subject to liberal amendment, should be liberally construed so as to do substantial justice, and that decisions should be made on the merits rather than on technical niceties. The Pleading Code rejects the approach that pleading is a game of skill in which one misstep is decisive to the outcome, but instead accepts the principle that the purpose of pleading is to facilitate a proper decision on the merits. (Citations omitted.)

¶ 17 Dalke's original *pro se* answer clearly laid out the facts which would support his defenses/counterclaims. There is no unfair advantage to allow for a decision on the merits under the facts of this case wherein Dalke is merely attempting to comply with the Green Tree's unilateral financing agreement and keep his home—especially when Dalke is the nonmoving party defendant in this cause.

¶ 18 Green Tree insists it is entitled to summary judgment because Dalke is in default. Dalke argues that: 1) under the UCC, an accord and satisfaction had been reached before Green Tree filed the lawsuit;[7] 2) Green Tree did not act in good faith and that they engaged in deceptive trade practices;[8] and 3) the security agreement gives Dalke the right to cure the default before repossession occurs.[9] Furthermore, Dalke claims that Green Tree went out of its way to obstruct his rights to pay and misrepresented the facts in the affidavit thereby breaching the financing agreement. Consequently,

Dalke insists that material fact questions exist which preclude summary judgment.

¶ 19 A motion for summary judgment should be sustained only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[10] All conclusions drawn from the evidentiary materials submitted to the trial court are viewed in the light most favorable to the party opposing the motion.[11] Even when basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different conclusions from the undisputed facts.[12]

¶ 20 A crucial material issue at play in this cause is the amount actually owed to cure the default. There is no evidentiary showing of how the balance of $49,900.34 that Green Tree alleges Dalke was calculated. There is no amortization schedule, nor calculations showing Dalke's balance after his last payment in November of 2014, nor how the $3,346.00 arrearage was calculated, nor any of the credit given from the Choctaw Nation payment.

¶ 21 Even if the amount of $3,346.00 were undisputed, the evidence presented by both parties' pleadings is conflicting regarding a partial payment towards the amount, or at least an attempt to make the partial payment. The evidentiary materials show plausible arguments that Green Tree obstructed Dalke's ability to become timely with his payments to avoid foreclosure. Green Tree: 1) denied it had received a check from the Choctaw Nation; 2) cashed a check from the Choctaw Nation before filing this lawsuit; 3) neglected to credit Dalke's account; 4) insist-

---

7. Title 12A O.S. 2011 3-311, see note 4, supra.

8. Title 15 O.S. 2011 752, see note 5, supra.

9. See, the Loan Agreement, note 2, supra.

10. K & K Food Services, Inc. v. S & H, Inc., 2000 OK 31, ¶ 16, 3 P.3d 705; Skinner v. Braum's Ice Cream Store, 1995 OK 11, ¶ 9, 890 P.2d 922; Buck's Sporting Goods, Inc., of Tulsa v. First Nat. Bank & Trust Co. of Tulsa, 1994 OK 14, ¶ 11, 868 P.2d 693.

11. K & K Food Services, Inc. v. S & H, Inc., see note 10, supra; Phelps v. Hotel Management, Inc., 1996 OK 114, ¶ 7, 925 P.2d 891; State ex rel. Hettel v. Security National Bank & Trust Co. in Duncan, 1996 OK 53, ¶ 24, 922 P.2d 600.

12. Prichard v. City of Oklahoma City, 1999 OK 5, ¶ 19, 975 P.2d 914.

ed that it could not accept a check from both Dalke and the Choctaw Nation; and 5) did not refund the Choctaw Nation in a timely manner after the lawsuit was filed.

¶ 22 Based on the disputed evidence, it is possible that the "Consumer Protection Act" may have been violated and that Green Tree may have acted in bad faith by actively attempting to prevent the opportunity to cure the default. The Consumer Protection Act states:

"Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral; [13]

"Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.[14]

When on the evidence is viewed in the light most favorable to Dalke, as we are required to do, there is a question concerning whether Green Tree engaged in deceptive or unfair practices and whether Green Tree acted in good faith regarding Dalke's attempt at curing the default.

## CONCLUSION

¶ 23 In First Nat. Bank and Trust Co. of Vinita v. Kissee, 1993 OK 96, ¶ 24, 859 P.2d 502 we said:

"Banks have an obligation to exercise good faith and fair dealing with its customers. The common law imposes this implied covenant upon all contracting parties, that neither party, because of the purposes of the contract, will act to injure the parties' reasonable expectations nor impair the rights or interests of the other to receive the benefits flowing from their contractual relationship."

The loan agreement explicitly gave Dalke a right to cure missed payments. Based on the evidence, there is a material fact issue as to whether Green Tree was preventing Dalke from practicing this right, then acknowledging receipt of funds from the Choctaw Nation and cashing the check, or not giving accurate information about the arrearage in general.

**COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED.**

GURICH, V.C.J., KAUGER, WATT, COLBERT, REIF, JJ., concur.

WYRICK, J., concurs in judgment

COMBS, C.J., WINCHESTER, EDMONDSON, JJ., dissent.

---

**13.** 15 O. S. 2011 752 13, see note 5, supra.

**14,** 15 O. S. 2011 752 14, see note 5, supra.