LOVEN v. CHURCH MUTUAL INSURANCE CO.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:LOVEN v. CHURCH MUTUAL INSURANCE CO.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 LOVEN v. CHURCH MUTUAL INSURANCE CO.
2019 OK 68
Case Number: 116808; Comp w/116954
Decided: 10/22/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 68, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

LISA GAYE LOVEN, Plaintiff/Appellant,
v.
CHURCH MUTUAL INSURANCE COMPANY and JEFFREY F. HANES, Defendants/Appellees.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION III

Thomas E. Prince, Trial Judge

¶0 The plaintiff/appellant, Lisa Loven, is a general contractor who applied for a public adjuster license with the Oklahoma Department of Insurance (the Department). After she disclosed that a former client sued her for acting as an unlicensed adjuster, the Department opened an investigation regarding her application. Subsequently, the Department denied her application, and Loven appealed. During the appeal hearing Church Mutual Insurance and its adjuster Jeffrey Hanes provided information regarding their dealings with Loven as a general contractor when she contracted for storm repair work for two churches they insured. The appellate hearing officer affirmed the denial of her application as a public adjuster because she had illegally acted as an unlicensed public adjuster. Loven sued Church Mutual and Hanes for intentional interference with a prospective economic business advantage. The trial court granted summary judgment to Church Mutual and Hanes because 36 O.S. Supp. 2012 §363 provides civil tort immunity to insurers who provide any information of fraudulent conduct to the Department. Loven appealed and the Court of Civil Appeals affirmed. We granted certiorari to address the statutory immunity provisions and to determine the first impression question of whether the tort of intentional interference with a prospective economic business advantage requires an element of bad faith. We hold that: 1) 36 O.S. Supp. 2012 §363 provides immunity for those who report or provide information regarding suspected insurance fraud as long as they, themselves, do not act fraudulently, in bad faith, in reckless disregard for the truth, or with actual malice in providing the information; and 2) the alleged tort of intentional interference with a prospective economic business advantage requires a showing of bad faith. However, because no proffered evidence in this cause tends to show bad faith, the immunity provisions of 36 O.S. Supp. 2012 §363 apply, and summary judgment was proper.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED.

Stanley M. Ward, Barrett T. Bowers, Norman, Oklahoma, for Plaintiff/Appellant.

Kenyatta R. Bethea, Oklahoma City, Oklahoma, for Defendants/Appellees.

KAUGER, J.:

¶1 We granted certiorari to address the first impression question of whether a claim of the tort of intentional interference with a prospective economic business advantage requires a showing of bad faith, and whether the immunity protections provided by 36 O.S. Supp. 2012 §363 were forfeited under the alleged facts.[1] We hold that: 1) 36 O.S. Supp. 2012 §363 provides immunity for those who report or provide information regarding suspected insurance fraud as long as they, themselves, do not act fraudulently, in bad faith, in reckless disregard for the truth, or with actual malice in providing the information; and 2) the alleged tort of intentional interference with a prospective economic business advantage requires a showing of bad faith.[2] However, because no proffered evidence in this cause tends to show bad faith, the immunity provisions of 36 O.S. Supp. 2012 §363 apply, and summary judgment was proper.

FACTS AND PROCEDURAL HISTORY

¶2 The plaintiff/appellant, Lisa Gaye Loven (Loven) worked as a general contractor in the construction business. In May of 2012, the Edmond Christian Church (ECC) contacted Loven to repair damage to several church buildings caused by storms. According to Loven, after she contracted with the ECC to make the repairs, she contacted their insurer, the defendant/appellee, Church Mutual Insurance (insurer/Church Mutual) to discuss the differences in her estimated repair costs and Church Mutual's estimated costs. Ultimately as a result of Loven's intervention, Church Mutual paid ECC over $221,000.00 more than the insurer's initial estimate of loss. Loven then performed the repairs, and ECC paid her for her work.

¶3 Also in May of 2012, Loven submitted estimates to Chisolm Creek Baptist Church (CCBC) for property damage to its buildings as well. CCBC also used Church Mutual, whose adjuster Jeff Hanes valued the damage to CCBC's buildings at $4,000.00. Again, Loven intervened on behalf of her client. Through discussions back and forth, engineer inspections, delays in payment, etc, Church Mutual again ended up paying $221,000.00 more on the claim than they initially offered.

¶4 On July 21, 2015, Loven sumbmitted an online application with the Oklahoma Insurance Department (the Department) to become a licensed resident public adjuster. She disclosed, as required by her application, that she was currently being sued by a former client, Loc Nguyen,[3] who alleged that Loven acted as a public adjuster without a license which is prohibited by the Oklahoma Insurance Adjusters Licensing Act, 36 O.S. 2011 §§6201 et seq.[4] Due to this disclosure, the Anti-Fraud Unit of the Department opened an investigation. As part of the investigation, the Anti-Fraud Unit interviewed Church Mutual employees regarding their dealings with Loven during 2012.

¶5 The Department denied Loven's application on October 30, 2015. An administrative appeal hearing was held on January 20, 2016, and continued on February 4, 2016. Church Mutual employees and Hanes testified at the administrative appeal hearing. The hearing examiner denied the application on the grounds that Loven negotiated client's claim settlements and acted as an unlicensed adjuster and that she received inflated compensation through ownership of a construction business due to the claims she negotiated. The hearing examiner also determined that Loven had submitted a bogus invoice in the amount of $14,923.00 and added $2,984.59 for her overhead and profit on the bogus charge. The bogus charges related to the use of a crane when "lifts" were actually used instead of a crane on the CCBC repairs.

¶6 On March 30, 2016, the State of Oklahoma charged Loven and her subcontractor with felonies of filing a false claim for insurance[5] and conspiracy to commit a felony,[6] stemming from the crane invoice submitted to CCBC. The charges were eventually dismissed on June 9, 2016. On October 13, 2016, Loven filed a lawsuit against Church Mutual and its adjuster Hanes in the District Court of Oklahoma County. She alleged that Church Mutual and Hanes intentionally interfered with her prospective business opportunity/economic advantage. She specifically asserted that they intentionally interfered with her attempts to get licensed as a public adjuster in retaliation for her actions which caused them to pay more in hail damage roof claims than they had offered to pay to ECC and CCBC.

¶7 On November 7 and November 10, 2016, Hanes and Church Mutual filed motions to dismiss, arguing that: they were obligated to follow the Oklahoma Insurance Code; they were subpoenaed by the Oklahoma Insurance Department as part of Loven's investigation; and any information they gave was protected by immunity from Loven's lawsuit pursuant to 36 O.S. Supp. 2012 §363.[7]

¶8 Loven objected to the motions to dismiss, arguing that immunity was inapplicable to this cause because the alleged intentional interference occurred regarding her application to be a public adjuster, and not as a result of a "report" by Church Mutual or Hanes. On January 9, 2017, the trial court granted the motions to dismiss, but allowed Loven thirty days to amend her petition to try and plead her way around the immunity provisions of the statute. She filed an amended petition on January 17, 2017, making essentially the same allegations. Church Mutual and Hanes filed motions to dismiss the amended petition, but the trial court denied the motions on May 12, 2017.

¶9 On August 18, 2017, Church Mutual and Hanes filed motions for summary judgment, again arguing that they were immune from liability. On January 31, 2018, the trial court entered an order granting the defendants' motion for summary judgment. It determined that the uncontroverted facts show that the Oklahoma Insurance Code, 36 O.S. Supp. 2012 §363 provided the defendants immunity from tort liability. On March 2, 2018, the plaintiff appealed, and on April 27, 2018, the Court made this cause a companion case to Case No. 116,954, involving the same parties, so that both cases would be assigned to the same Court of Civil Appeals division for disposition.

¶10 Case No. 116,954 remains pending in the Court of Civil Appeals, but on October 29, 2018, the Court of Civil Appeals, in this cause, No. 116,808, affirmed the trial court. On November 16, 2018, Loven filed a Petition for Writ of Certiorari in this Court, arguing that Church Mutual and Hanes were not entitled to the immunity protections provided by 36 O.S. Supp. 2012 §363. We granted certiorari on April 22, 2019, to address the statutory immunity provisions, whether the tort of intentional interference with a prospective economic business advantage requires a showing of bad faith, and whether summary judgment was proper.

I. 

TITLE 36 O.S. 2012 §363 PROVIDES IMMUNITY FOR THOSE WHO REPORT OR FURNISH INFORMATION CONCERNING FRAUDULENT ACTS AS LONG AS THEY, THEMSELVES, DO NOT ACT FRAUDULENTLY, IN BAD FAITH, IN RECKLESS DISREGARD FOR THE TRUTH OR WITH ACTUAL MALICE IN PROVIDING THE INFORMATION.

¶11 Loven argues that the statutory immunity provided by 36 O.S. 2012 §363[8] only applies when an insurer reports suspected fraudulent activity and because Church Mutual or Hanes did not initiate a suspected fraud report against her with the Department, the statutory immunity is inapplicable to them. Church Mutual and Hanes counter that Loven's argument is contrary to the plain language of the statute. We agree.

¶12 The statute is plain and unambiguous. When a statute is plain and unambiguous, there is no need to resort to statutory construction[9] nor does any justification exist for the use of interpretive devices to fabricate a different meaning.[10] Title 36 O.S. Supp. 2012 subsection A of §363 requires insurers such as Church Mutual to report suspected fraud. It provides:

A. Any insurer, employee or agent of any insurer who has reason to believe that a person or entity has engaged in or is engaging in an act or practice that violates any statute or administrative rule of this state related to insurance fraud shall immediately notify the Anti-Fraud Unit of the Insurance Department and, in the case of an allegation of claimant fraud, the Workers' Compensation and Insurance Fraud Unit of the Office of the Attorney General.

¶13 Subsection B precludes civil or criminal liability against an insurer, in absence of fraud, bad faith, or reckless disregard for the truth, for providing such information. It provides:

B. No insurer, employee or agent of an insurer, or any other person acting in the absence of fraud, bad faith, reckless disregard for the truth, or actual malice shall be subject to civil liability for libel, slander or any other relevant tort or subject to criminal prosecution by virtue of filing of reports or furnishing other information either orally or in writing, concerning suspected, anticipated or completed fraudulent insurance acts to the Anti-Fraud Division of the Insurance Department or the Workers' Compensation and Insurance Fraud Unit of the Office of the Attorney General pursuant to subsection A of this section or to any other agency involved in the investigation or prosecution of suspected insurance fraud.

¶14 Subsection C provides civil or criminal immunity for the filing of reports or furnishing other information, either orally or in writing, concerning suspected, anticipated or completed fraudulent insurance acts to the Anti-Fraud Division of the Insurance Department. Title 36 O.S. Supp. 2012 §363 (C) provides:

C. No civil or criminal cause of action of any nature shall exist against the person or entity by virtue of filing of reports or furnishing other information, either orally or in writing, concerning suspected, anticipated or completed fraudulent insurance acts to the Anti-Fraud Division of the Insurance Department pursuant to subsection A of this section or to any other agency involved in the investigation or prosecution of suspected insurance fraud. The immunity provided in this subsection shall extend to the act of providing or receiving information or reports to or from:

1. Law enforcement officials, their agents and employees;

2. The National Association of Insurance Commissioners, any state department of insurance, any federal or state agency or bureau established to detect and prevent fraudulent insurance activities, as well as any other organization established for the same purpose, their agents, employees or designees; and

3. Any organization or person involved in the prevention and detection of fraudulent insurance activities or that organization or person's employees, agents, or representatives.

The immunity provided in this subsection shall not extend to any person, insurer, or agent of an insurer for communications or publications about suspected insurance fraud to any other person or entity.

¶15 The immunity provisions of §363 expressly apply to either reports made under subsection A, or when an insurer furnishes information, either orally or in writing for an investigation or prosecution of suspected insurance fraud.[11] The terms of the statute, insofar as to when immunity applies, are clear and unambiguous. If Church Mutual, or any other insurer, furnished information for an investigation or prosecution, as they did in this cause, they are protected from civil action for libel, slander or any other relevant tort or any criminal action.

¶16 The only exception for such immunity is if the insurer provides such information fraudulently, in bad faith, in reckless disregard for the truth, or with actual malice. Consequently, the next questions we must answer is whether Loven's alleged tort of intentional interference with a prospective economic business advantage requires a showing of bad faith/wrongfulness and if it does, do the alleged facts survive a motion for summary judgment?

II. 

INTENTIONAL INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE REQUIRES A SHOWING OF BAD FAITH, BUT BECAUSE NO OFFERED EVIDENCE TENDS TO SHOW BAD FAITH, THE IMMUNITY PROVISIONS OF 36 O.S. SUPP. 2012 §363 APPLY, AND SUMMARY JUDGMENT WAS PROPER.

¶17 Church Mutual and Hanes argue that it is important to note that Loven has not provided any evidence that they allegedly acted with fraud, bad faith or reckless disregard for the truth, or actual malice, and that the Department on two separate occasions found Loven's conduct to be in violation of Oklahoma's adjuster licensing requirements. Loven insists that Church Mutual and Hanes did provide false information to the Department fraudulently and in bad faith and that her license would not have been denied were it not for their participation in the proceedings.

¶18 This Court has not examined the details of the particular elements of the tort of intentional interference with a prospective economic business advantage,[12] but we have discussed the elements of the tort of intentional interference with a current or "present" business relationship. Insofar as the former is concerned, this is a case of first impression. In Tuffy's Inc. v. City of Oklahoma City, 2009 OK 4, ¶14, 212 P.3d 1158 we noted that one has a right to prosecute a lawful business without unlawful molestation or unjustified interference from any person, and any malicious interference with that business is an unlawful act and an actionable wrong. We laid out the elements of a claim for malicious interference as follows:

1.) interference with a business or contractual right;
2.) malice or wrongful interference that is neither justified, privileged, nor excusable; and
3.) damage proximately sustained as a result of the interference.[13]

¶19 We stated that the element of malice, for malicious interference, is defined as an unreasonable and wrongful act done intentionally, without just cause or excuse and that it clearly requires a showing of bad faith. We also stated that the terms "malicious interference," "intentional interference," and "tortious interference" with contract and business relations have been used interchangeably[14] and constitute the same tort in Oklahoma jurisprudence.

¶20 Tuffy's, supra, concerned an action brought under the Oklahoma Governmental Torts Claims Act, (GTCA) 51 O.S. §§155 et seq. Because the element of malicious and wrongful interference necessarily involves some degree of bad faith, we held that a political subdivision is not liable for malicious interference with a business relationship committed by its employees because bad faith actions are specifically excluded from the GTCA's definition of the scope of employment.

¶21 Other courts, including the Oklahoma Court of Civil Appeals, have detailed the essential elements of a claim for intentional interference with a prospective economic advantage as follows:

1.) the existence of a valid business relation or expectancy;
2.) knowledge of the relationship or expectance on the part of the interferer;
3.) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
4.) resultant damage to the party whose relationship has been disrupted.[15]

Although the tort as it relates to current/present business relations and prospective business relations are extremely similar, they are recognized as distinct torts.[16] Courts define interference as: inducing a third person not to enter into the prospective relation or preventing the other party from acquiring the prospective relation;[17] encompassing an unfair or unlawful act or by lawful means without justification; [18] or intentionally acting with the purpose to interfere with the relationship or expectancy.[19] In other words, like the tort of current or present business interference in Tuffy's, supra, the element of intentional interference clearly requires a showing of bad faith.[20] The interference must be the purpose of the tortfeasor's act, and their motive must include a desire to interfere and disrupt the others' prospective economic business advantage.[21]

¶22 In the evidentiary materials submitted in this cause, the offered evidence may infer that Church Mutual's and Hanes' responses to the Department's investigation of Loven have interfered or inhibited with her ability to become a licensed public adjuster. However, no evidence tends to show that either Church Mutual or Hanes acted with the intentional purpose to interfere or in bad faith in responding to the Department's questions concerning their experiences in dealing with Loven. Nor is there any evidence that any interference was done with an improper, wrongful, or malicous motive.

¶23 The purpose of their interference was in response to the Department's investigation, which was in response to Loven's online application to be a public adjuster. Accordingly, Church Mutual and Hanes are entitled to immunity pursuant to 36 O.S. Supp. 2012 §363.[22] Because no genuine issue of material facts exists, Church Mutual and Hanes are entitled to a judgment as a matter of law.[23] The judgment of the trial court is affirmed.

CONCLUSION

¶24 Consistent with our opinion in Tuffy's, supra, wrongful/intentional interference of any form implies some degree of bad faith. Because the tort of intentional interference with a prospective economic business advantage requires a showing of wrongfulness, it also implies a showing of bad faith. Therefore, the tort falls under the language of "other relevant torts" of 36 O.S. Supp. 2012 §363.[24] Section 363 provides immunity for those who report or provide information regarding suspected insurance fraud as long as they, themselves, do not act fraudulently, in bad faith, in reckless disregard for the truth, or with actual malice in providing the information.

¶25 The alleged tort of intentional interference with a prospective economic business advantage does require a showing of bad faith. However, because no offered evidence in this cause tends to show bad faith, the immunity provisions of 36 O.S. Supp. 2012 §363 apply to this cause. Summary judgment was proper.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED.

GURICH, C.J., DARBY, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, KANE, JJ., concur.

COLBERT, J - not participating.

FOOTNOTES

[1] Title 36 O.S. Supp. 2012 §363 of the Oklahoma Insurance Code provides:

A. Any insurer, employee or agent of any insurer who has reason to believe that a person or entity has engaged in or is engaging in an act or practice that violates any statute or administrative rule of this state related to insurance fraud shall immediately notify the Anti-Fraud Unit of the Insurance Department and, in the case of an allegation of claimant fraud, the Workers' Compensation and Insurance Fraud Unit of the Office of the Attorney General.

B. No insurer, employee or agent of an insurer, or any other person acting in the absence of fraud, bad faith, reckless disregard for the truth, or actual malice shall be subject to civil liability for libel, slander or any other relevant tort or subject to criminal prosecution by virtue of filing of reports or furnishing other information either orally or in writing, concerning suspected, anticipated or completed fraudulent insurance acts to the Anti-Fraud Division of the Insurance Department or the Workers' Compensation and Insurance Fraud Unit of the Office of the Attorney General pursuant to subsection A of this section or to any other agency involved in the investigation or prosecution of suspected insurance fraud.

C. No civil or criminal cause of action of any nature shall exist against the person or entity by virtue of filing of reports or furnishing other information, either orally or in writing, concerning suspected, anticipated or completed fraudulent insurance acts to the Anti-Fraud Division of the Insurance Department pursuant to subsection A of this section or to any other agency involved in the investigation or prosecution of suspected insurance fraud. The immunity provided in this subsection shall extend to the act of providing or receiving information or reports to or from:

1. Law enforcement officials, their agents and employees;

2. The National Association of Insurance Commissioners, any state department of insurance, any federal or state agency or bureau established to detect and prevent fraudulent insurance activities, as well as any other organization established for the same purpose, their agents, employees or designees; and

3. Any organization or person involved in the prevention and detection of fraudulent insurance activities or that organization or person's employees, agents, or representatives.

The immunity provided in this subsection shall not extend to any person, insurer, or agent of an insurer for communications or publications about suspected insurance fraud to any other person or entity.

[2] Title 36 O.S. 2012 §363, see note 1, supra.

[3] That cause was Oklahoma County Case No. CJ-2015-185 and it was filed on June 12, 2015, by Loc Nguyen. He alleged Loven acted as an adjuster without a license, and committed breach of contract. He sought replevin of $17,688.51. The jury returned a verdict for $10,693.17 on May 25, 2017.

[4] Title 36 O.S. Supp. 2011 §§6201 et seq. Section 6302 provides in pertinent part:

. . .2. "Adjuster" means either an insurance adjuster or a public adjuster;

3. "Insurance adjuster" means any person, firm, association, company, or legal entity that acts in this state for an insurer, and that investigates claims, adjusts losses, negotiates claim settlements, or performs incidental duties arising pursuant to the provisions of insurance contracts on behalf of an insurer and includes:

a. "independent adjusters", meaning any insurance adjuster that suggests or presents to the insurance industry and public that said adjuster acts as an adjuster for a fee or other compensation, and

b. "company or staff adjusters", meaning adjusters who engage in the investigation, adjustment, and negotiation of claims as salaried employees of an insurer;

4. "Public adjuster" means any person, firm, association, company, or corporation that suggests or presents to members of the public that said public adjuster represents the interests of an insured or third party for a fee or compensation. Public adjusters may investigate claims and negotiate losses to property only; . . .

[5] Title 21 O.S. Supp. 2012 §1162 provides:

Any person who presents or causes to be presented any false or fraudulent claim, or any proof in support of any such claim, upon any contract of insurance, for the payment of any loss, or who prepares, makes or subscribes any account, certificate, survey affidavit, proof of loss, or other book, paper or writing, with intent to present or use the same, or to allow it to be presented or used in support of any such claim, shall be guilty of a felony punishable by imprisonment in the State Penitentiary not exceeding three (3) years, or by a fine not exceeding twice the amount of the aggregated loss sum, or both.

[6] Title 21 O.S. 2011 §421 provides:

A. If two or more persons conspire, either:

1. To commit any crime; or

2. Falsely and maliciously to indict another for any crime, or to procure another to be charged or arrested for any crime; or

3. Falsely to move or maintain any suit, action or proceeding; or

4. To cheat and defraud any person of any property by any means which are in themselves criminal, or by any means which, if executed, would amount to a cheat or to obtaining money or property by false pretenses; or,

5. To commit any act injurious to the public health, to public morals, or to trade or commerce, or for the perversion or obstruction of justice or the due administration of the laws, they are guilty of a conspiracy.

B. Except in cases where a different punishment is prescribed by law the punishment for conspiracy shall be a misdemeanor unless the conspiracy is to commit a felony.

C. Conspiracy to commit a felony shall be a felony and is punishable by payment of a fine not exceeding Five Thousand Dollars ($5,000.00), or by imprisonment in the State Penitentiary for a period not exceeding ten (10) years, or by both such fine and imprisonment.

[7] Title 36 O.S. Supp. 2012 §363, see note 1, supra.

[8] Title 36 O.S. 2012 §363, see note 1, supra

[9] Rouse v. Oklahoma Merit Protection Commission, 2015 OK 7, ¶17, 345 P.3d 368, Twin Hills Golf & Country Club, Inc. v. Town of Forest Park, 2005 OK 71, ¶6, 123 P.3d 5.

[10] Rouse v. Oklahoma Merit Protection Commission, see note 9, supra; Strong v. State of Oklahoma, ex rel., The Oklahoma Police Pension and Retirement Board, 2005 OK 45, ¶8, 115 P.3d 889; Keating v. Edmondson, 2001 OK 110, ¶15, 37 P.3d 882; Neer v. State ex rel. Oklahoma Tax Comm'n, 1999 OK 41, ¶16, 982 P.2d 1071.

[11] Title 36 O.S. Supp. 2012 §363, see note 1, supra.

[12] In both Gaylord Entertainment Co. v. Thompson, 1998 OK 30, ¶¶49-50, 958 P.2d 128, and Brock v. Thompson, 1997 OK 127, ¶¶32-33, 948 P.2d 279, we expressly neglected to detail the particular elements of a cause of action for what we referred to as the common-law claim for "tortious interference with advantageous business relations," but we did determine that plaintiffs' complaint fails to disclose allegations of "unlawful" means used to interfere with the plaintiffs' "prospective or present" business relationships. We noted in Brock, supra in footnotes 58 and 59 that:

Oklahoma jurisprudence teaches that one has the right to prosecute a lawful business without unlawful molestation or unjustified interference from any person, and any malicious interference with that business is an unlawful act and an actionable wrong. Crystal Gas Co. v. Oklahoma Natural Gas. Co., Okl., 529 P.2d 987, 989 (1974); Nat'l Life & Accident Ins. Co. v. Wallace, 162 Okl. 174, 21 P.2d 492, 494 (1933); Stebbins v. Edwards, 101 Okl. 188, 224 P. 714, 715-16 (1924); Schonwald v. Ragains, 32 Okl. 223, 122 P. 203, 208 (1912). For a discussion of the difference between interference with a prospective economic advantage and with contractual or business relations, see Overbeck v. Quaker Life Ins. Co., 1984 OK CIV APP 44, 757 P.2d 846, 847-48. See in this connection Lakeshore Community Hosp., Inc. v. Perry, 538 N.W.2d 24, 27 (Mich.App. 1995); Weitting v. McFeeters, 304 N.W.2d 525, 529 (Mich.App.1981); Wilkerson v. Carlo, 300 N.W.2d 658, 659 (Mich.App. 1981), for the elements of tortious interference with advantageous business relationships or prospective economic relations. The Restatement (Second) of Torts § 766B states that "[o]ne who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation."

There is no actionable claim if the interference is lawful or does not encompass any unfair or unlawful act. See, e.g., Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 168, 521 N.Y.S.2d 672, 676 (1987) (intentional interference with a precontractual business relationship is actionable if effected by unlawful means or, under the theory of prima facie tort, by lawful means without justification); Quail Ridge Assocs. v. Chemical Bank, 162 A.D.2d 917, 919-20, 558 N.Y.S.2d 655, 658, appeal dismissed, 76 N.Y.2d 936, 563 N.Y.S.2d 64, 564 N.E.2d 674 (N.Y.App.1990); accord BPS Clinical Laboratories v. Blue Cross and Blue Shield of Michigan, 552 N.W.2d 919, 925 (Mich.App.1996) (Michigan law) (requiring unlawful means); see also Bonelli v. Volkswagen of Am., 421 N.W.2d 213, 219-220 (Mich.App.1988)(requiring unlawful means).

However, in Wilspec Techs, Inc. v. Dunan Holding Group Co., 2009 OK 12, ¶6, 204 P.3d 69, a case in which we answered the Federal Question of whether Oklahoma adopts the Restatement (Second) of Torts §766A which allows a claim against one who prevents the other from performing the contract or causing performance to be more expensive or burdensome. We recognized that the tort could be applied to existing and prospective business relations when we noted intentional interference with business relations may be interference with a third party existing contract; with plaintiff's own performance; or with prosepective contractual relations not yet reduced to contract. We also noted in Wilspec, supra, that:

¶15 Presently, Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage. Mac Adjustment, Inc., 1979 OK 41, ¶ 5, 595 P.2d 427, 428. Additionally, the claim is viable only if the interferor is not a party to the contract or business relationship. Voiles v. Santa Fe Minerals, Inc., 1996 OK 13, ¶ 18, 911 P.2d 1205, 1209.

¶16 Although Defendants provide adverse authority from other jurisdictions, we believe that where the law provides a remedy against a tortfeasor who induces or causes a third party not to perform the contract, the protection against such tortious acts extends to a party who is unable to perform his/her contract or where such performance becomes more costly or unduly burdensome. To hold otherwise would unjustly enrich a tortfeasor and leave a plaintiff less than whole.

[13] Tuffy's Inc. v. City of Oklahoma City, 2009 Ok 4, ¶14, 212 P.3d 1158; Daniels v. Union Baptist Ass'n, 2001 OK 63, ¶13, 55 P.3d 1012; Green Bay Packaging, Inc. v. Preferred Packaging, Inc., 1996 OK 121, ¶21, 932 P.2d 1091; Voiles v. Santa Fe Minerals Inc., 1996 OK 13, ¶18 fn. 6, 911 P.2d 1205; Morrow Dev. Corp. v. American Bank & Trust Co., 1994 OK 26, ¶10, 875 P.2d 411; James Energy Co. v. HCG Energy Corp., 1992 OK 117, ¶29, 847 P.2d 333; Waggoner v. Town & Country Mobile Homes, Inc., 1990 OK 139, ¶27, 808 P.2d 649; Mac Adjustment, Inc. v. Property Loss Research Bureau, 1979 OK 41, ¶5, 595 P.2d 427.

[14] Tuffy's Inc. v. City of Oklahoma City, 2009 Ok 4, ¶15, fn. 34, 212 P.3d 1158 provides that "[T]he note to Oklahoma Uniform Jury Instruction-Civil, OUJI-Civil 24.1 provides that the term "business relationship" may be substituted for the word "contract" throughout to adapt for a claim of interference with a business relationship. OUJI-Civil 24.1. . . ."

[15] See, Robert's Hawaii School Bus, Inc. v Laupahoehoe, 91 Hawai'i 224, 258, 982 P.2d 853, 888 (1999); Gonzalez v. Sessom, 2006 OK CIV APP 61, ¶16, 137 P.3d 1245; Boyle Services, Inc. v. Dewberry Design Group, Inc., 2001 OK CIV APP 63, ¶6, 24 P.3d 878; Lakeshore Community Hosp. v. Perry, 212 Mich. App. 396, 401, 538 N.W. 2d 24, 26 (1995); These elements have apparently evolved at least in part, from the Restatement (Second) of Torts §766B at 20 (1979) which defines the tort of "Intentional Interference with Prospective Contractual Relations" as follows:

One who intentionally and improperly interferes with another's prospective contractual relation (except to marry) is subject to liability to the other for pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
(b) preventing the other from acquiring or continuing the prospective relation.

See also, Note, Leigh Furniture and Carpet Co. v. Isom: Utah's New Tort for Interference with Prospective Economic Relations, 10 J. Contemp. L. 227 (1984) (Discussing the views of the Restatement (First) of Torts, Restatement (Second) of Torts, and the Oregon View which requires improper motives or means plus an improper intent to interfere.).

[16] This distinction apparently attempts to preserve the ability of individuals to freely compete in the marketplace. For example, The Supreme Court of California, in Della Penna v. Toyota Motor Sales, U.S.A., 11 Cal. 4th 376, 392, 902 P.2d 740 (1995), summarized the reasoning;

We are guided by . . . the need to draw and enforce a sharpened distinction between claims for tortious disruption of an existing contract and claims that a prospective contractual or economic relationship has been interfered with by the defendant . . . Economic relationships short of contractual, however, should stand on a different legal footing as far as the potential for tort liability is reckoned. Because ours is a culture firmly wedded to the social rewards of commercial contests, the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties.

The Supreme Court of Tennessee, citing to Della Penna, supra, also reiterated the importance of the distinction;

Because the tort (of intentional interference with a prospective economic advantage) extends beyond situations in which there exists a valid contractual relationship, it could potentially infringe upon the principle of free competition by holding liable those individuals engaged in legitimate business practices.

Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 699, (2002).

[17] Brock v. Thompson, see note 12, supra.

[18] Gaylord Entertainment Co. v. Thompson, see note 12, supra.

[19] Robert's Hawaii School Bus, Inc. v Laupahoehoe, see note 15, supra.

[20] Courts include some requirement of interference to be wrongful or improper or illegal by some measure beyond the fact of the interference itself. The Supreme Court of Oregon stated the following in Top Service Body Shop, Inc. v. Allstate Ins. Co., 283 Ore. 201, 209, 582 P.2d 1365 (1978);

. . . [S]uch a claim is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means. They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession.

Connecticut requires "plaintiff to plead and to prove at least some improper motive or improper means" and quoting Top Service, supra, that the interference be "wrongful by some measure beyond the fact of the interference itself." Blake v. Levy, 191 Conn. 257, 262, 464 A.2d 52 (1983). Idaho requires that the interference be "improper" or "wrongful". That the plaintiff must show . . . the interference was wrongful by some measure beyond the fact of the interference itself. Syringa Networks, LLC v. Idaho Dep't of Admin., 155 Idaho 55, 64, 305 P.3d 499 (2013). Illinois requires that there be intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy. Voyles v. Sandia Mortg. Corp., 196 Ill. 2d 288, 300, 751 N.E.2d 1126 (2001).

The Restatement (Second) of Tort §767, at 25-26 discusses determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not considering the following factors:

(a) the nature of the actor's conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.

[21] Top Service Body Shop v. Allstate, see note 19 supra.

[22] Title 36 O.S. Supp. 2012 §363, note 1, supra.

[23] A motion for summary judgment should be sustained only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Green Tree Servicing, LLC., v. Dalke, 2017 OK 74, ¶19, 405 P.3d 676; K & K Food Services, Inc. v. S & H, Inc., 2000 OK 31, ¶16, 3 P.3d 705; Skinner v. Braum's Ice Cream Store, 1995 OK 11, ¶9, 890 P.2d 922; Buck's Sporting Goods, Inc., of Tulsa v. First Nat. Bank & Trust Co. of Tulsa, 1994 OK 14, ¶11, 868 P.2d 693. All conclusions drawn from the evidentiary materials submitted to the trial court are viewed in the light most favorable to the party opposing the motion. Green Tree Servicing, LLC., v. Dalke, supra; K & K Food Services, Inc. v. S & H, Inc., supra; Phelps v. Hotel Management, Inc., 1996 OK 114, ¶7, 925 P.2d 891; State ex rel. Hettel v. Security National Bank & Trust Co. in Duncan, 1996 OK 53, ¶24, 922 P.2d 600. Even when basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different conclusions from the undisputed facts. Green Tree Servicing, LLC., v. Dalke, supra; Prichard v. City of Oklahoma City, 1999 OK 5, ¶19, 975 P.2d 914.

[24] Title 36 O.S. Supp. 2012 §363, see note 1, supra.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2001 OK CIV APP 63, 24 P.3d 878, 72 OBJ 1628, BOYLE SERVICES, INC. v. DEWBERRY DESIGN GROUP, INC.
Discussed
 2006 OK CIV APP 61, 137 P.3d 1245, GONZALEZ v. SESSOM
Discussed
 1984 OK CIV APP 44, 757 P.2d 846, Overbeck v. Quaker Life Ins. Co.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 139, 808 P.2d 649, 62 OBJ 541, Waggoner v. Town & Country Mobile Homes, Inc.
Discussed
 1992 OK 117, 847 P.2d 333, 63 OBJ 2303, James Energy Co. v. HCG Energy Corp.
Discussed
 1994 OK 14, 868 P.2d 693, 65 OBJ 449, Buck's Sporting Goods, Inc. of Tulsa v. First Nat. Bank & Trust Co. of Tulsa
Discussed
 1994 OK 26, 875 P.2d 411, 65 OBJ 789, Morrow Development Corp. v. American Bank and Trust Co.
Discussed
 2001 OK 63, 55 P.3d 1012, 72 OBJ 1973, DANIELS v. UNION BAPTIST ASSN.
Discussed
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSON
Discussed
 1933 OK 160, 21 P.2d 492, 162 Okla. 174, NATIONAL LIFE & ACCIDENT INS. CO. et al. v. WALLACE.
Discussed
 1995 OK 11, 890 P.2d 922, 66 OBJ 156, Skinner v. Braum's Ice Cream Store
Discussed
 1974 OK 34, 529 P.2d 987, CRYSTAL GAS CO. v. OKLAHOMA NATURAL GAS CO.
Cited
 2005 OK 45, 115 P.3d 889, IN THE MATTER OF STRONG
Discussed
 1996 OK 13, 911 P.2d 1205, 67 OBJ 529, Voiles v. Santa Fe Minerals, Inc.
Discussed at Length
 2005 OK 71, 123 P.3d 5, TWIN HILLS GOLF & COUNTRY CLUB, INC. v. TOWN OF FOREST PARK
Discussed
 1996 OK 53, 922 P.2d 600, 67 OBJ 1324, State ex rel. Hettel v. Security Nat. Bank & Trust Co. in Duncan
Discussed
 1996 OK 114, 925 P.2d 891, 67 OBJ 3045, Phelps v. Hotel Management, Inc.
Discussed
 2009 OK 4, 212 P.3d 1158, TUFFY'S, INC. v. CITY OF OKLAHOMA CITY
Discussed at Length
 2009 OK 12, 204 P.3d 69, WILSPEC TECHNOLOGIES, INC. v. DUNAN HOLDING GROUP, CO. LTD.
Discussed
 1996 OK 121, 932 P.2d 1091, 67 OBJ 3291, Green Bay Packaging, Inc. v. Preferred Packaging, Inc.
Discussed
 1924 OK 227, 224 P. 714, 101 Okla. 188, STEBBINS v. EDWARDS
Discussed
 2015 OK 7, 345 P.3d 366, ROUSE v. OKLAHOMA MERIT PROTECTION COMMISSION
Cited
 1979 OK 41, 595 P.2d 427, MAC ADJUSTMENT, INC. v. PROPERTY LOSS RESEARCH BUREAU
Discussed at Length
 2017 OK 74, 405 P.3d 676, GREEN TREE SERVICING LLC. v. DALKE
Discussed
 2000 OK 31, 3 P.3d 705, 71 OBJ 965, K & K Food Services, Inc. v. S & H, Inc.
Discussed
 1997 OK 127, 948 P.2d 279, 68 OBJ 3316, Brock v. Thompson
Discussed
 1998 OK 30, 958 P.2d 128, 69 OBJ 1404, GAYLORD ENTERTAINMENT CO. v. THOMPSON
Discussed
 1999 OK 5, 975 P.2d 914, 70 OBJ 469, Prichard v. City of Oklahoma City
Discussed
 1999 OK 41, 982 P.2d 1071, 70 OBJ 1551, Neer v. State ex rel. Oklahoma Tax Commission
Discussed
 1912 OK 210, 122 P. 203, 32 Okla. 223, SCHONWALD v. RAGAINS
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 421, Conspiracy - Definition - Punishment
Cited
 21 O.S. 1162, Unlawfully Purchasing or Receiving Dead Body - Penalty
Cited
Title 36. Insurance
 Cite
Name
Level

 36 O.S. 363, Reporting Suspected Fraud - Grant of Immunity
Discussed at Length
 36 O.S. 6201, Short Title
Discussed
Title 51. Officers
 Cite
Name
Level

 51 O.S. 155, Exemptions From Liability
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA